# EXHIBIT 1

2020 WL 7774292
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Manisha BAHRANI and Duncan Legget, individually and on behalf of all others similarly situated
v.
NORTHEASTERN UNIVERSITY

CIVIL ACTION NO. 20-10946-RGS
|
Filed 12/30/2020

**Attorneys and Law Firms**

[Alec M. Leslie](), Pro Hac Vice, [Frederick J. Klorczyk, III](), Pro Hac Vice, Bursor & Fisher, P.A., New York, NY, [E. Michelle Drake](), Pro Hac Vice, [Joseph C. Hashmall](), Pro Hac Vice, Berger & Montague, P.C., Minneapolis, MN, [Patrick F. Madden](), Pro Hac Vice, [Shanon J. Carson](), Pro Hac Vice, Berger & Montague, P.C., Philadelphia, PA, [David Pastor](), Pastor Law Office, LLP, Boston, MA, for Manisha Bahrani.

[E. Michelle Drake](), Pro Hac Vice, [Joseph C. Hashmall](), Pro Hac Vice, Berger & Montague, P.C., Minneapolis, MN, [Patrick F. Madden](), Pro Hac Vice, [Shanon J. Carson](), Pro Hac Vice, Berger & Montague, P.C., Philadelphia, PA, [David Pastor](), Pastor Law Office, LLP, Boston, MA, for Duncan Legget.

[Daniel J. Cloherty](), [Rebecca M. O'Brien](), [Victoria L. Steinberg](), Todd & Weld, John A. Shope, [Rachel C. Hutchinson](), Foley Hoag LLP, Boston, MA, for Northeastern University.

MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS TO DISMISS

[STEARNS](), D.J.

\*1 Plaintiffs Manisha Bahrani and Duncan Legget filed this putative class action against defendant Northeastern University. By way of a Second Amended Class Action Complaint (SAC) (Dkt. # 41), they allege that Northeastern breached an express or implied contract with its students (Counts I and II), or alternatively unjustly enriched itself at its students' expense (Count III), when it retained tuition and fees collected for the Spring semester of 2020 despite ceasing in-person instruction and closing its on-campus facilities and resources in March of 2020. Northeastern moves to dismiss all claims pursuant to [Fed. R. Civ. P. 12(b)(6)](). For the following reasons, the court will ALLOW the motion in part and DENY it in part.

BACKGROUND

The essential facts, drawn from the SAC and documents incorporated by reference, and viewed in the light most favorable to the plaintiffs as the non-moving parties, are as follows. Northeastern is "one of the largest private urban universities in North America." SAC ¶ 23. It "offers undergraduate majors in approximately 65 departments" and graduate degrees in "approximately 125 programs." *Id.* Plaintiffs are students who enrolled in classes at Northeastern during the Spring semester of 2020.

According to the SAC, plaintiffs entered into a contractual agreement with Northeastern to pay tuition and fees for the Spring semester of 2020 in exchange for "on-campus, in-person educational services and access to on-campus facilities, events, and services." *Id.* ¶ 125; *see also id.* ¶ 22, 102 (alleging that the tuition and fees which Northeastern charged for the Spring semester of 2020 "were predicated on," among other things, in-person interaction with peers and professors and access to "technology, libraries, and laboratories," "spectator sports and athletic programs," "student government and health services," and "extracurricular groups and learning"). Plaintiffs purport to derive the terms of this contract from representations in the Student Financial Responsibility Agreement (SFRA), which Northeastern required each student to execute prior to the start of the semester; students' billing statements and invoices; and Northeastern's course registration materials.

Plaintiffs allege that they fulfilled their obligations under the contract when they "paid all required tuition and fees" for the Spring semester of 2020. *Id.* ¶ 17, 20; *see also id.* ¶ 36. They enrolled in classroom courses, and for the first half of the semester, Northeastern met its obligation to provide in-person instruction. On March 12, 2020, however, Northeastern "cancelled all in-person classes for its campuses" and "suspended access to on-campus resources, including gyms and libraries informed students." *Id.* ¶ 92. It "has not provided any in-person classes" or given students access to the university's on-campus facilities and resources since that date. *Id.* ¶ 91.

After Northeastern refused to offer its students a refund for tuition or semester fees, plaintiffs filed this lawsuit. They assert three claims on behalf of "[a]ll persons in the United States who paid Northeastern University tuition and/or fees for in-person education and/or access to campus facilities, in-person events, and in-person services for the academic term including March 2020 or for any academic term thereafter during which Northeastern failed to provide in person educational services"; breach of an express contract (Count I); breach of an implied contract (Count II); and unjust enrichment (Count III). *Id.* ¶ 108.

## DISCUSSION

**\*2** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### a. Counts I and II, breach of contract

Counts I and II assert claims for breach of contract (express and implied, respectively) relative to the payment of tuition and fees for the Spring semester of 2020.[1] "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961).

Northeastern argues that plaintiffs have failed to state a claim because they have not sufficiently identified the basis for any contractual right to in-person instruction. Plaintiffs respond that the contractual right to in-person instruction derives from three sources: (1) representations in billing statements and invoices listing the tuition and fees charged each semester; (2) representations in the SFRA tying the payment of tuition to registration and the receipt of "educational services"; and (3) representations in course registration materials indicating that the educational services plaintiffs had contracted to receive would include traditional, face-to-face instruction in physical locations on campus.[2] Drawing all inferences in plaintiffs' favor, the court cannot, as a matter of law, say that no student who read these statements could have reasonably expected that executing the SFRA, paying the tuition charged for the Spring semester of 2020, and registering for on-campus courses would entitle them to in-person instruction. *See Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340, at \*15 (D. Mass. Aug. 26, 2013) ("When interpreting contracts between students and their academic institutions, under Massachusetts law courts employ the standard of reasonable expectation — what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." (internal quotation marks omitted)), quoting *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 (2000). Further factual development is needed to resolve the issue on the merits.[3] The court accordingly denies the motion to dismiss the portion of Counts I and II premised on payment of tuition.

**\*3** The portion of Counts I and II premised on the failure to provide access to on-campus facilities and resources presents a closer issue. Plaintiffs allege that their payment of certain fees entitled them to the referenced access. To assess the parties' reasonable expectations, the court turns to the descriptions provided by Northeastern for each fee. Northeastern purports to assess the recreation fee "during terms a student is in classes to support and maintain current facilities and the future construction of athletic fields and facilities" and to give students "the option to gain admission to home athletic events, use the Marino Fitness Center, the SquashBusters athletic facility, and the Cabot Gym." SAC ¶ 30. It purports to assess the student activity fee annually to "provide[ ] support for student organizations, clubs and entertainment events throughout the school year." *Id.* It purports to assess the student center fee "to support[ ] the Curry Student Center." *Id.* Finally, it purports to assess the undergraduate student fee per "in-class ... term" to "support[ ] enrollment related services throughout the student's first year" and to "support[ ] subsequent enrollment services and ... costs related to ongoing communication to students and parents." *Id.*

Because students pay the student activity fee, the student center fee, and the undergraduate student fee to "support" certain facilities during terms for which those students are enrolled in classes, and not to gain admission to any on-campus facility or access to a given resource (or even to support the operation of any specific service at an on-campus facility), plaintiffs have not stated a claim for breach of contract with respect to these fees. [4] The court accordingly allows the motion to dismiss the portions of Counts I and II premised on payment of the student activity fee, the student center fee, or the undergraduate student fee.

Students also pay the campus recreation fee to "support" certain facilities. Payment of the campus recreation fee, however, further gives students "the option to gain admission to home athletic events" and to "use the Marino Fitness Center, the SquashBusters athletic facility, and the Cabot Gym." Because plaintiffs allege that they actually and constructively lost the option to attend home athletic games or use fitness facilities after March 12, 2020, [5] plaintiffs have stated a plausible claim for breach of contract with respect to the campus recreation fee. The court accordingly declines to dismiss the portion of Counts I and II premised on payment of the campus recreation fee.

### b. Count III, unjust enrichment

Count III asserts a claim of unjust enrichment. Northeastern argues that plaintiffs cannot, as a matter of law, state a claim for unjust enrichment because they have an adequate alternative remedy available, namely, a breach of contract action. *See* Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017) (noting that "a party with an adequate remedy at law cannot claim unjust enrichment"). But Northeastern disputes the existence of any contract between the parties requiring in-person instruction or access to on-campus facilities and resources. And plaintiffs plead unjust enrichment only to the extent the parties do not have a valid contract on these grounds. It would thus be inappropriate for the court to require plaintiffs to make an exclusive election of a contractual remedy at this early stage of the litigation. *See* Lass v. Bank of Am., N.A., 695 F.3d 129, 140-141 (1st Cir. 2012). The court accordingly declines to dismiss Count III. [6]

### ORDER

**\*4** For the foregoing reasons, the motion to dismiss is ALLOWED in part and DENIED in part. Specifically, the court dismisses the potions of Counts I, II, and III premised on the failure to provide access to on-campus facilities and resources in exchange for payment of the student activity fee, the student center fee, or the undergraduate student fee. The portions of Count I, II, and III premised on the failure to provide in-person instruction in exchange for the payment of tuition and the failure to provide access to on-campus facilities and resources in exchange for the payment of the campus recreation fee, however, survive defendant's motions.

SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 7774292

### Footnotes

1. The court is not convinced that plaintiffs' contract claim is a disguised educational malpractice claim, as Northeastern implies. The SAC appears to challenge the fact of the switch from in-person to online instruction, not the *quality* of the online education Northeastern provided. *See* Salerno v. Fla. S. Coll., 2020 WL 5583522, at \*5 (M.D. Fla. Sept. 16, 2020). And while it is possible that the measure of damages for this alleged breach will so inextricably implicate the issue of quality as to render the claim non-actionable, the court needs more information before it can make an informed judgment.

2. Northeastern disputes the allegation that a student could reasonably expect the statements in course registration materials to explain the nature of the "educational services" that he or she would receive under the SFRA. But the court declines to resolve the issue as a matter of law at this juncture. Plaintiffs' allegation is at least plausible given repeated references to the registration process in the SFRA and the fact that, as a

| | |
|---|---|
| | matter of common sense, students presumably would not incur any obligation to pay for "educational services" unless they registered for classes. It would thus be inappropriate to dismiss the claim prior to discovery. |
| 3 | Other documents unavailable to the court at the motion to dismiss stage, for example, may undercut the reasonableness of any expectation of in-person instruction. |
| 4 | While plaintiffs plead that Northeastern recognizes these fees ratably over the course of the semester, they do not suggest that they stopped incurring any obligation to pay the fees after the switch to online instruction (and the court declines to make this inference on their behalf where they seemingly remained enrolled in courses for the semester despite the switch). In any event, as Northeastern notes in its Reply Brief, the fees were collected to "support" the referenced facilities, and plaintiffs do not suggest that Northeastern failed to apply the fees towards "support" as promised. *See id.* at 7. |
| 5 | To the extent Northeastern implies that it could not have breached any obligation to give students the "option" to attend home athletic games because there were no home athletic games held on campus after March 12, 2020, this argument implicates a factual issue (whether cancelling all home athletic events deprived students of the *option* to attend home athletic games) and is therefore inappropriate for resolution at the motion to dismiss stage. |
| 6 | The court notes, however, that the unjust enrichment claims only survive to the extent that the contract claims survive. It thus dismisses the portions of Count III premised on payment of a student activity fee, student center fee, or undergraduate student fee. |

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.