# EXHIBIT 5

2021 WL 908564 (Cal.Super.) (Trial Order)
Superior Court of California,
Civil Complex Center.
Orange County

GRANT,

v.

CHAPMAN UNIVERSITY.

No. 30-2020-01146699-CU-BC-CXC.
January 22, 2021.

\*1 DEPT: CX104
CLERK: Gus Hernandez
BAILIFF/COURT ATTENDANT: None
CASE INIT.DATE: 07/02/2020
CASE CATEGORY: Civil - Unlimited
CASE TYPE: Breach of Contract/Warranty

**Minute Order**

Cheryl Kenner, from Shegerian & Associates, Inc., present for plaintiff(s) telephonically.

Holland and Knight by Kristina S. Azlin appearing telephonically for defendant.

William Claster, Judge.

REPORTER/ERM: (ACRPT) Jane Hong CSR# 11975

EVENT ID/DOCUMENT ID: 73409371

**EVENT TYPE:** Demurrer to Amended Complaint

MOVING PARTY: Chapman University

CAUSAL DOCUMENT/DATE FILED: Demurrer to Amended Complaint to First Amended Complaint, 11/16/2020

EVENT ID/DOCUMENT ID: 73409372

**EVENT TYPE:** Motion to Strike

MOVING PARTY: Chapman University

CAUSAL DOCUMENT/DATE FILED: Motion to Strike portions of 1st amended complaint, 11/16/2020

**1)Defendant Chapman University's Demurrer to Plaintiffs Findlay Grant and Desmond Jackson's First Amended Complaint**

**2) Defendant Chapman University's Motion to Strike Portions of Plaintiffs Findlay Grant and Desmond Jackson's First Amended Complaint**

Tentative Ruling posted on the Internet.

The Court hears oral argument and confirms the tentative ruling. The Court's ruling is attached hereto and incorporated herein by reference.

The 02/02/2021 Status Conference remains on calendar. Court orders moving party to give notice.

## DEMURRER

The Court rules as follows with respect to Defendant Chapman University's demurrer to the first amended complaint (FAC) of plaintiffs Findlay Grant and Desmond Jackson:

1. The demurrer is OVERRULED as to the first cause of action (breach of contract).

2. The demurrer is SUSTAINED WITH LEAVE TO AMEND as to the second and fourth causes of action (unjust enrichment and UCL).

3. The demurrer is SUSTAINED WITHOUT LEAVE TO AMEND as to the third cause of action (conversion).

Plaintiffs shall have until February 19, 2021 to file a second amended complaint. The Court notes that neither the Declaration of Glenn M. Pfeiffer (with roughly 1,250 pages of exhibits) nor Plaintiffs' supplement of trial court authorities (with roughly 300 pages of exhibits) is internally tabbed as required by CRC 3.1110(f)(4). The parties are ordered to follow this requirement in future filings.

## EVIDENTIARY MATTERS

Chapman seeks judicial notice of numerous documents attached to the Costanzo and Pfeiffer Declarations. Plaintiffs do not oppose Chapman's request.

Upon review of the declarations, it appears to the Court that the documents attached to the Costanzo Declaration are all orders, proclamations, etc. of federal, state or local governments. The Court therefore GRANTS judicial notice of these documents. (Evid. Code § 452(c).)

The documents attached to the Pfeiffer Declaration are another story. Exhibits A-F to the Pfeiffer Declaration are as follows:

A. Chapman's 2019-20 undergraduate catalog (Grant is an undergraduate student)

B. Chapman's 2019-20 graduate catalog (Jackson is a graduate student)

C. Chapman's Tuition and Fee Master Payment Contract, as executed by Grant

D. Chapman's Tuition and Fee Master Payment Contract, as executed by Jackson

E. Chapman's March 11, 2020 notice of transition to online instruction

      F. Chapman's April 8, 2020 notice explaining what charges would (and would not) be refunded as a result of the transition to online instruction

**\*2** In its request for judicial notice, Chapman argues without citation to authority that notice of the first four documents is proper under the "incorporation by reference doctrine" because these documents, which are mentioned in the complaint, are "critical to Plaintiffs' breach of contract claims." (ROA 48, at p. 5.) To the Court's knowledge, California law does not recognize incorporation by reference as a basis for judicial notice. In *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, the Court of Appeal found the trial court committed reversible error when it took judicial notice of a contract that was mentioned in, but not attached to, a complaint. There, as here, the defendant argued notice was proper because "consideration of the [contract] was essential to a proper understanding of the allegations of the complaint." (*Id.*, at p. 113.) *Fremont Indemnity* explains that "[a]lthough the *existence* of a document may be judicially noticeable, the truth of statements contained in the document and its proper interpretation are not subject to judicial notice if those matters are reasonably disputable." (*Ibid.* [emphasis original].)

Here, the terms of the parties' contracts are in dispute. Plaintiffs allege the course catalogs contained representations about in-person instruction, while Chapman denies the same. Chapman seeks notice of the contract documents to establish that its interpretation of the parties' contracts is correct. Under *Fremont Indemnity*, this is improper. Accordingly, notice of exhibits A-D to the Pfeiffer declaration is DENIED.

Similarly, Chapman seeks notice of exhibits E-F for the truth of the matters asserted therein, not their existence. The Court therefore DENIES notice of exhibits E-F.

### GROUNDS FOR RULING

As set forth in more detail in the FAC, in response to the COVID-19 pandemic, Chapman closed campus facilities and transitioned all classes to online-only instruction in March 2020. Plaintiffs allege that when they paid tuition and facility fees to Chapman for the winter and spring 2020 terms, they did so pursuant to a contract providing for in-person instruction and access to campus facilities. On behalf of a putative class of Chapman students, plaintiffs allege that Chapman's closure of campus and transition to online instruction violated the law by, among other things, breaching their enrollment contracts.

### I. Standard of Review

In evaluating a demurrer, the Court is guided by long-settled rules. The Court "treat[s] the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) "The complaint must be construed liberally by drawing reasonable inferences from the facts pleaded." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517.) "Further, [the Court] gives the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872.)

### II. Analysis

#### A. Educational Malpractice

Before addressing the merits of individual causes of action, Chapman argues that no matter how plaintiffs caption their claims, this case sounds in "educational malpractice." Generally speaking, courts do not intervene in a school's academic affairs unless the school's actions are arbitrary and capricious, i.e., there is "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." (*Banks v. Dominican College* (1995) 35 Cal.App.4th 1545, 1551.)

As Chapman notes, the FAC alleges online instruction "resulted in worse educational and learning opportunities for the students" (FAC, ¶ 26) and online "classes were far less valuable and effective than in-person classes." (FAC, ¶ 24.) Thus, Chapman argues, plaintiffs' claims are really about whether Chapman gave them a "good enough" education, meaning the claims sound in "educational malpractice," Chapman further argues that neither the closure of campus nor the transition to online instruction is arbitrary and capricious as a matter of law, so Plaintiffs' claims fail.

**\*3** But as plaintiffs point out, just because a claim touches on educational issues does not mean it sounds in "educational malpractice." For example, in *Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, a student sued USC for breach of contract related to her sociology course, which ceased meeting entirely midway through the semester when the USC faculty went on strike. (*Id.*, at p. 7.)

Reversing the trial court's order sustaining USC's demurrer without leave to amend; the Court of Appeal wrote: "The allegations heretofore summarized spell out a contract obligating defendant USC to give the course 'Sociology 200' consisting of a given number of lectures and a final examination in consideration of the tuition and fees for the course paid by plaintiff. The stated number of lectures and the normal type of final examination were not given.... [W]hether it justifies refund of a portion of the tuition and fee allocable to the course is a matter of proof, under the present state of the pleadings, at trial in an appropriate forum." (*Id.*, at p. 11.)

Similarly, in *Kashmiri v. Regents of the University of California* (2007) 156 Cal.App.4th 809, the plaintiff students alleged that the UC system breached a contract not to increase the "professional development fee" charged to students at the system's professional schools. UC argued that its decision to increase the fee had to be evaluated under the highly deferential standard afforded to educational malpractice claims. The Court of Appeal disagreed: "The present action does not involve what is essentially an educational malpractice claim or a decision that involves disciplinary discretion.... 'Ruling on this [fee dispute] would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment' of the University's performance of its promise." (*Id.*, at pp. 826-827 [alteration original, internal citation omitted].)

Plaintiffs also identify two recent trial court decisions applying California law in the COVID-19 context. The Court finds their reasoning persuasive. In *Verlanga v. University of San Francisco* (SFSC No. CGC-20-584829, Nov. 12, 2020 (slip op. attached as Exhibit 23 to ROA 77)) 2020 WL 7229855, the court rejected USF's argument that the plaintiff's claims about online instruction sounded in educational malpractice. Rather, the case was "simply about an alleged promise to provide in-person learning that was allegedly breached." (*Id.*, at slip op. p. 8 [internal quotation omitted].) Similarly, in *Saroya v. University of the Pacific* (N.D.Cal. Nov. 27, 2020, No. 5:20-cv-03196-EJD) 2020 WL 7013598, the court wrote, "[Plaintiff's] claim is not that UOP failed to provide students with an adequate education, but that it failed to provide certain services as promised. Notwithstanding Plaintiff's allegations comparing remote learning to in-person learning, '[r]uling on these issues would not require an inquiry into pedagogical methods, the quality of Defendant's instructors and curriculum, or an evaluation of Plaintiff [s] progress or achievement, or the reasons for their success or failure.'" (*Id.*, at \*4 [internal citation omitted].)

The Court agrees with the analysis in *Verlanga* and *Saroya* and finds that Plaintiffs' claims do not sound in educational malpractice, at least at the pleading stage.

### B. Breach of Contract (1st COA)

**\*4** The elements of a breach of contract are (1) the existence of a contract; (2) plaintiff's performance (or excuse thereof); (3) defendant's breach; and (4) damages. (*San Mateo Union High School Dist v. County of San Mateo* (2013) 213 Cal.App.4th 418, 439.)

Chapman disputes the third and fourth elements. As to the third element, it offers three arguments for why it has not breached the contract. First, plaintiffs cannot point to any promise of in-person instruction or access to campus facilities. Second, plaintiffs failed to comply with the contract requirements for getting a refund of tuition and fees, so they are owed nothing. Third, the contract between Chapman and its students gives Chapman the right to do exactly what it did here.

As to the fourth element, Chapman argues that whatever damages plaintiffs suffered were caused by government shutdown orders, not Chapman.

#### 1. Promise of In-Person Instruction

The FAC (¶ 22) alleges the following about the promise to provide in-person instruction:
> Plaintiffs registered and paid for in-person undergraduate classes for the Spring semester based on Defendants' representations made in a course catalog. Plaintiffs expected Defendants to provide in-person instruction for the entire term and enrolled for the term and paid all fees and tuition based on such expectations and representations.

Both *Verlanga* (slip op., at pp. 4-7) and *Saroya* (2020 WL 7013598, at \*5) found similar allegations sufficient to state an implied promise of in-person instruction at the demurrer/motion to dismiss stage. The Court agrees with these authorities. Plaintiffs have adequately alleged an implied promise to provide in-person instruction for the entire term.

#### 2. Refund Policy/Chapman's Powers Under Contract

Chapman argues that whatever the contract provides with respect to in-person instruction, plaintiffs are owed no money because they failed to comply with the contract's refund provisions. Chapman also argues that the contract gives it the right to change instructional offerings at any time, subject only to the constraints of the standard of review applicable to "educational malpractice" claims.

Whatever the merits of these arguments, the contract terms Chapman relies upon are not set forth in the FAC. They are found in the course catalogs, and the Court has declined to take judicial notice of the course catalogs for the reasons set forth above. These arguments are not properly raised by demurrer.

#### 3. Cause of Damages

In the FAC, Plaintiffs all but admit Chapman is not to blame for closing the campus or transitioning to online instruction. (FAC, ¶ 2 ["Defendants may not bear culpability for the campus closures or the inability to provide any classroom instruction"].) Chapman argues that in light of this admission, plaintiffs cannot plead a contract claim. Chapman's argument is really an affirmative defense of excuse of performance or impossibility of performance, not an argument about causation of damages. It is not properly raised by demurrer. (See *Verlanga*, slip op. at p. 8 [USF's claim that closures were required by government order "may well be [true], but it is not dispositive of Plaintiffs' claims at the pleading stage"].)

**\*5** For these reasons, the demurrer to the first cause of action is overruled.

### C. Unjust Enrichment (2nd COA)

"The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.' (Citation.)" (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1593.) Plaintiffs appear to have adequately alleged the elements of unjust enrichment: they paid tuition money to Chapman, which has retained it in unjust circumstances (i.e., Chapman has retained the money despite not providing on-campus instruction and access to campus facilities).

As Chapman points out, however, the FAC suffers from another flaw. A claim for unjust enrichment lies only when there is no enforceable contract, and plaintiffs' first cause of action alleges an enforceable contract. Their second cause of action does not allege the *lack* of an enforceable contract. "Although a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement, that is not what occurred here. Instead, plaintiffs' breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement. Plaintiffs are therefore precluded from asserting a quasi-contract claim under the theory of unjust enrichment." (*Klein v. Chevron U.S.A., Inc.* (2012) 2020 Cal.App.4th 1342, 1389-90.)

Accordingly, the demurrer to the second cause of action is sustained with leave to amend in order to allow plaintiffs to attempt to cure this defect if they so desire.

### D. Conversion (3rd COA)

Chapman offers several reasons why Plaintiffs' conversion claim fails, but the Court need consider only one: "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment.... A generalized claim for money is not actionable as conversion." (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 [internal quotations omitted].)

Plaintiffs allege that Chapman has "wrongfully retained a portion" of their tuition and fees. (FAC, ¶ 77.) They do not specify the amount at issue, but in their opposition, they suggest it is a simple ratio for each plaintiff (and, presumably, for each class member): take the full tuition paid by each student for the terms at issue, divide by the total number of in-person class sessions the student was expected to have during those terms to derive a per-session rate, and multiply the per-session rate by the number of sessions the student was expected to have between March 11, 2020 (the transition to online instruction and closure of campus) and the end of the term.

This does not solve the problem. Plaintiffs' proposed calculation treats all classes as having the same per-session value, even though some classes might meet three times a week and others once a week (suggesting the latter is three times as valuable as the former on a per-session basis). Plaintiffs' proposed calculation also ignores differences in course loads among students and the possibility that a student's tuition is covered in whole or in part by grants or scholarships (meaning the money actually expended by the student, as opposed to the grantor or scholarship fund, is less than full tuition). Furthermore, insofar as plaintiffs claim Chapman converted the fees charged for campus facility access (as opposed to tuition charged for classes), their proposed calculation does not address those funds at all.

**\*6** A prorated per-session calculation is "only [an] estimate [of] the amount" of money allegedly converted by Chapman. (*PCO, supra*, 150 Cal.App.4th at p. 397.) As such, plaintiffs have not pled a claim for conversion, and the demurrer to the third cause of action is sustained. Plaintiffs' own California authorities, *Verlanga* and *Saroya*, dismissed substantially similar

conversion allegations without leave to amend. (*Verlanga*, slip op. at p. 10; *Saroya*, 2020 WL 7013598 at *7.) The Court concurs with these cases. Because the Court does not see how Plaintiffs' conversion claim can be cured by amendment, the demurrer is sustained without leave to amend.

### E. UCL (4 <sup>th</sup> COA)

Chapman argues plaintiffs have not pled any facts showing Chapman has engaged in "unlawful, or unfair, or fraudulent" practices as required to state a UCL claim. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) In opposition, plaintiffs argue they have sufficiently pled unfair and fraudulent practices. Because plaintiffs do not mention the unlawful prong, the Court treats it as waived.

As to unfair practices, Plaintiffs argue that "an 'unfair' business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (*Smith v. State Farm Mutual Automobile Ins. Co* (2001) 93 Cal.App.4th 700, 719 [internal quotation omitted].) Plaintiffs claim Chapman's failure to reimburse students their prorated tuition is an unfair business practice. While Plaintiffs argue this practice constitutes unjust enrichment or conversion, the Court agrees with Chapman that it is properly considered a breach of contract.

A breach of contract may serve as the basis for a UCL claim, but only if the breach "also constitutes conduct that is unlawful, unfair, or fraudulent. (Citation.)" (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 645.) That is, the mere fact of breach does not give rise to a UCL claim—it must be independently unfair. The FAC concedes that Chapman bears no blame for shutting down in-person instruction. (FAC, ¶ 2.) In this context, where Chapman is not to blame for bringing about the conditions that caused campus closure and the transition to online instruction, the Court cannot see how Chapman's conduct is immoral, unethical unscrupulous, etc. Chapman's conduct as alleged appears to be a garden variety breach of contract, not the stuff of a UCL claim.

As to fraudulent practices, plaintiffs point to the alleged representation in the course catalog that Chapman would conduct classes in-person. (FAC, ¶ 22.) Once again, one of plaintiffs' own authorities explains the problem with this argument: plaintiffs do not "allege (nor, presumably, could they) that [Chapman's] statements were fraudulent *when made*—i.e., before the pandemic." (*Verlanga*, slip op. at p. 9 [emphasis original].) For this reason, they have not pled a fraudulent practice.

The demurrer to the fourth cause of action is sustained. Because this is the first challenge to the pleadings, and because it is not immediately apparent that amendment would be futile, leave to amend will be granted for plaintiffs to plead a UCL claim that adequately alleges unlawful, unfair, or fraudulent practices.

### MOTION TO STRIKE

Defendant Chapman University's motion to strike portions of the first amended complaint of plaintiffs Findlay Grant and Desmond Jackson is GRANTED. The following portions of the FAC are struck:

    1. Paragraph 16, in its entirety, and footnotes 2 and 3 thereto.

**\*7**  2. Paragraph 35, in its entirety.

    3. Paragraph 36, in its entirety, and footnotes 16 and 17 thereto.

    4. At page 18, line 19, the phrase "exemplary damages."

## I. Background

As set forth in more detail in the FAC, in response to the COVID-19 pandemic, Chapman closed campus facilities and transitioned all classes to online-only instruction in March 2020. Plaintiffs allege that when they paid tuition and facility fees to Chapman for the winter and spring 2020 terms, they did so pursuant to a contract providing for in-person instruction and access to campus facilities. On behalf of a putative class of Chapman students, plaintiffs allege that Chapman's closure of campus and transition to online instruction violated the law by, among other things, breaching their enrollment contracts.

At issue here are two sets of allegations. Items 1-3 above allege Chapman's wealth (net worth, size of endowment, donations from alumni, etc.). Item 4 is plaintiffs' prayer for punitive or exemplary damages.

## II. Analysis

A court may strike "any irrelevant, false, or improper matter inserted in any pleading." (CCP § 436(a).) "Irrelevant" matter includes allegations not essential to the statement of a claim, allegations neither pertinent to nor supported by an otherwise sufficient claim, and demands for judgment requesting relief not supported by the allegations of the complaint. (*Id.*, § 431.10(b).) A court may also strike "all or part of any pleading not drawn or filed in conformity with the laws of this state." (*Id.*, § 436(b).)

### A. Punitive/Exemplary Damages

Chapman argues plaintiffs are not entitled to punitive damages as a matter of law. The Court agrees.

The first cause of action (breach of contract) and the fourth cause of action (UCL) do not permit recovery of punitive damages. (Civ. Code § 3294(a) [punitive damages available "[i]n an action for the breach of an obligation not arising from contract"]; *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1148 ["damages, including punitive damages, are not available under the UCL"].) Plaintiffs do not contend that the second cause of action (unjust enrichment/quasi contract) allows for punitive damages, instead putting all their eggs in the conversion basket.

While the third cause of action, for conversion, theoretically permits recovery of punitive damages, that claim is not viable. As stated in the companion order on Chapman's demurrer, the Court is sustaining without leave to amend the demurrer to plaintiffs' conversion claim. Conversion therefore provides no basis for recovery of punitive damages.

Separately from the underlying causes of action, Chapman argues plaintiffs have not adequately pled the "oppression, fraud, or malice" necessary for punitive damages. (Civ. Code, § 3294(a).) The Court agrees. As set forth in the demurrer order, the Court believes plaintiffs have pled a garden variety breach of contract. The FAC does not sufficiently allege unlawful, unfair or fraudulent conduct for purposes of a UCL claim, let alone the oppression, fraud, or malice necessary for punitive damages.

### B. Wealth Allegations

**\*8** The remaining allegations at issue describe Chapman's wealth. Chapman argues these allegations are "irrelevant," that is, they neither pertinent to nor supported by an otherwise sufficient claim for relief. (CCP § 431.10(b).) In opposition, plaintiffs cite section 210 of the Evidence Code, arguing that evidence having any tendency to prove or disprove a fact of consequence is relevant.

Assuming for the sake of argument that Evid. Code § 210 applies to motions to strike (rather than CCP § 431.10(b)), the Court finds that allegations relating to Chapman's wealth are irrelevant to every issue in this case except possibly plaintiffs' prayer for punitive damages. (See *Adams v. Murakami* (1991) 54 Cal.3d 105, 110 ["A reviewing court cannot make a fully informed

determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition."].) As to that issue, because the prayer is grounded on the non-viable conversion cause of action, there is no basis for allowing it to remain in the case.

This action centers on Chapman's post-COVID closure of its campus and transition to online-only classes. Plaintiffs allege this course of conduct breached Chapman's promise to provide in-person instruction and allow access to campus facilities. Plaintiffs seek a prorated refund as damages. Chapman's financial condition has nothing to do with the merits of Plaintiffs' claims: either Chapman breached this promise or it did not. Nor does Chapman's financial condition figure into plaintiffs' compensatory damages. Plaintiffs argue in their demurrer for a prorated refund based on the number of class sessions that should have been provided in person. This measure has nothing to do with Chapman's wealth. The Court therefore strikes the allegations relating to Chapman's wealth.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.