# EXHIBIT 6

2021 WL 358391
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia, Atlanta Division.

Jane DOE and Marc Schultz, individually and on behalf of all others similarly situated, Plaintiffs,
v.
EMORY UNIVERSITY, Defendant.

CIVIL ACTION FILE NO. 1:20-CV-2002-TWT
|
Signed 01/22/2021

**Attorneys and Law Firms**

[David A. Searles](), Pro Hac Vice, [Edward Skipton](), [John Soumilas](), Pro Hac Vice, [James A. Francis](), Pro Hac Vice, Francis Mailman Soumilas, P.C., Philadelphia, PA, [Edward A. Coleman](), Pro Hac Vice, [Lewis J. Saul](), Pro Hac Vice, Lewis Saul & Associates, P.C., New York, NY, [Jeffrey Sand](), Weiner & Sand LLC, Atlanta, GA, [Daniel J. Kurowski](), Hagens Berman Sobol Shapiro LLP, Chicago, IL, for Plaintiff Marc Schultz.

[Daniel J. Kurowski](), Hagens Berman Sobol Shapiro LLP, Chicago, IL, for Plaintiff Jane Doe.

[David Lewis Balser](), [Elliott Alexander Foote](), [Timothy Lee](), [Jonathan R. Chally](), [Katherine Paige Nobles](), King & Spalding, LLP, Atlanta, GA, for Defendant.

## OPINION AND ORDER

[THOMAS W. THRASH, JR.](), United States District Judge

*1 This is a putative breach of contract class action. It is before the Court on the Defendant's Motion to Dismiss [Doc. 33]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 33] is GRANTED in part and DENIED in part.

### I. Background

No facet of American life has remained untouched by the sudden and catastrophic arrival of the COVID-19 pandemic. As contagion and fear swept across the country in March 2020, Americans were forced to adapt to an everchanging new normal, moving much of their professional and social lives from the physical world to the virtual world. Perhaps no institution exemplifies the stark contrast between January's America and April's America than our schools, colleges, and universities. As social distancing and other mitigation efforts took hold, colleges and universities shut down their campuses, emptying their residence halls and moving classes online. One such university was the Defendant, Emory University. On or about March 11, 2020, Emory extended its spring break and announced a transition to remote learning beginning on March 23. (Am. Compl. ¶ 66.) Emory informed its students that it intended to close its buildings on March 23, as well, and students who lived in residential halls were expected to move out before March 22 at 5:00 p.m. (*Id.* ¶¶ 66–67.) As the pandemic continued to worsen throughout the year, most of the university's academic and nonacademic offerings remained virtual through the Fall 2020 semester. (*Id.* ¶ 3.) However, despite the significant change in offerings, the university's tuition charges remained the same. (*Id.*) It is this discrepancy that gives rise to this suit.

Plaintiff Jane Doe, a Georgia citizen, is a full-time nursing student at Emory who enrolled in both Spring and Fall 2020 semesters. (*Id.* ¶ 11.) Plaintiff Marc Schultz, a New York citizen, is the father of an Emory student who was enrolled in both Spring and Fall 2020 semesters. (*Id.* ¶ 12.) Doe and Schultz (collectively, "the Plaintiffs") bring this suit under the Class Action Fairness Act, [28 U.S.C. § 1332(d)(2)](), on behalf of themselves and others similarly situated seeking to redress for their allegedly lost benefit of the bargain. (*Id.* ¶¶ 8–9.) While Emory refunded "student accounts with a calculated amount of unused housing, dining, athletic fees, activity fees, parking fees, and other fees unrelated to academic instruction," the university did not refund tuition in the spring or prorate costs for lost services in the fall. (*Id.* ¶¶ 86–91.) In their view, "while Plaintiffs and Class Members paid for students' in-person access to renowned faculty as essential to the Emory experience, Defendant excluded students from such access for the Spring 2020 and Fall 2020 semesters." (*Id.* ¶ 19.) In their Amended Complaint, the Plaintiffs bring claims of breach of contract, breach of implied contract, unjust enrichment, and money had and received. (*Id.* ¶¶ 106–143.)

### II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible"

claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

**\*2** In its Motion to Dismiss, the Defendant raises several arguments as to why the Plaintiffs' claims fail. First, the Defendant argues that judicial intervention is unwarranted, both because of a long-recognized "deference to educators and administrators" and because of "the practical difficulties in assessing such claims." (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 8, 12.) Second, the Defendant claims that the Plaintiffs have failed to plead required elements of their claims. (*Id.* at 16–25.) Third, the Defendant claims that Plaintiff Schultz lacks standing to bring any contract claims. (*Id.* at 14–55.) In response, the Plaintiffs argue that their claims require no assessment of the Defendant's actions or the quality of its education, "but rather whether it delivered on its promise of an on-campus education." (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 6.) Further, the Plaintiffs argue that Plaintiff Schultz has standing to bring these claims and that all of their claims are sufficiently pleaded. (*Id.* at 9–25.)

#### A. Plaintiff Schultz's Standing

Before addressing the merits of the parties' claims here, this Court must determine whether Plaintiff Schultz has standing to bring his contract claims. *See Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 996 (11th Cir. 2020) ("[W]e must ourselves decide whether the plaintiffs in these cases have Article III standing, and we must do so before reaching the merits." (internal citations removed)). "Under settled precedent, the irreducible constitutional minimum of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Id.* (internal quotation marks omitted). At the motion to dismiss stage, a plaintiff need only satisfy "the burden of alleging facts that plausibly establish [his] standing." *Id.*

The Defendant argues that Schultz relies on his payment of tuition as evidencing a contract between him and the Defendant, and that such a payment does not create the necessary legal relationship. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 14.) Because this fact does not create a contractual relationship, and because there are no further allegations that indicate a contractual relationship between the parties, the Defendant claims that Schultz has not sufficiently alleged his standing for his contract claims, Counts I and II. (*Id.* at 14–15.) In response, the Plaintiffs argue that Schultz has sufficiently alleged the three elements of Article III standing—an injury-in-fact, causation, and redressability. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 9.) Further, the Plaintiffs argue that by evaluating whether a contractual relationship exists, the Defendant "confuses standing with the merits of Plaintiffs' claims," and that the Defendant's arguments ignore their implied contract claims. (*Id.* at 10.)

Schultz claims that because "he paid tuition and made other payments for in-person educational services that Emory failed to provide his child," he has suffered an injury-in-fact. (*Id.* at 9.) While believing you overpaid for something is a disappointment, it is not necessarily an injury-in-fact. An injury-in-fact "consists of an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Trichell*, 964 F.3d at 996 (internal quotation marks omitted). In the context of a breach of contract claim, that "legally protected interest" is the interest of parties or third-party beneficiaries created by the contract:

Under Georgia law, generally speaking, one not in privity of contract with another lacks standing to assert any claims arising from violation of the contract. A third party may, however, have standing to enforce a contract if it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient. In other words, a third-party beneficiary may be created only by the express terms of the contract.

**\*3** See *Kuchenmeister v. HealthPort Techs., LLC*, 753 F. App'x 794, 797 (11th Cir. 2018) (quoting *Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828 (2011)) (internal citations and quotation marks omitted). Thus, to determine whether one has standing to enforce an express contract claim at the motion to dismiss stage, a court must find that a plaintiff's allegations plausibly establish that he was either a party or a third-party beneficiary to the contract. While the Plaintiffs believe this inquiry confuses standing for the merits, the Court undertakes no substantive inquiry regarding the existence or effect of a contract, but rather whether the pleadings merely allege one.

Here, Schultz has made no allegation that he is a party or third-party beneficiary to an express contract with the Defendant. The Plaintiffs identify neither a contract to which Schultz is a party nor language in a contract indicating an express intent to make Schultz a third-party beneficiary. Instead, the Plaintiffs rely on state cases from other jurisdictions, and this showing does not indicate Schultz has standing to bring a breach of express contract claim under Georgia law.[1] (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 9–10.) Therefore, Schultz's claims under Count I are dismissed without prejudice.[2] See *Dimaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008) (noting that dismissals on standing grounds must be without prejudice).

The Plaintiffs next argue that Schultz's payment of tuition is sufficient to have standing for his breach of implied contract claims. This Court agrees, as Schultz has alleged facts that "plausibly establish [his] standing." *Trichell*, 964 F.3d at 996. In Georgia, "[i]mplied contracts are not evidenced by explicit language and arise from nonverbal conduct of the parties." *Davidson v. Maraj*, 609 F. App'x 994, 998–99 (11th Cir. 2015) (internal quotation marks omitted). Thus, without reaching the merits of Schultz's claims, allegations of making tuition payments represent a sufficient factual allegation of a nonverbal act that plausibly establishes his standing for an implied contract claim.

**B. Deference to University Administrators**

In its Motion to Dismiss, the Defendant makes a broad argument that Georgia courts have long "accord[ed] deference to universities in their academic and instructional decision-making," and that this Court should not intercede here. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 8–11.) Such discretion is prudent where "judicial action would require continuing supervision of the official conduct of public officers." *Deriso v. Cooper*, 246 Ga. 540, 543 (1980). For example, in *Woodruff v. Ga. State Univ.*, 251 Ga. 232, 233 (1983), the Georgia Supreme Court applied this judicial restraint to "decline to review a teacher's academic assessment of a student's work." In describing its decision, the court noted:

> **\*4** It is restraint which stems from confidence that school authorities are able to discharge their academic duties in fairness and with competence. It is born alike of the necessity for shielding the courts from an incalculable new potential for lawsuits, testing every Latin grade and every selection for the Safety Patrol.

*Id.*; see also *Jansen v. Emory Univ.*, 440 F. Supp. 1060, 1063 (N.D. Ga. 1977) ("[C]ourts are not empowered to review the manner of grading students and the setting of degree requirements."). In comparing this rationale to the case before the Court, it appears there are two significant distinguishing features. The first is the noncontinuous nature of the current dispute. Unlike academic assessment or student discipline, a school's response to a global pandemic is —hopefully—an uncommon event. Adjudicating a dispute

regarding its response does not imply a "burden of continuous legal turmoil," but rather the resolution of a once-in-several-generations occurrence. *Id.* Second, the standards that govern this case are familiar to the judiciary. The Defendant attempts to frame this dispute as one about "the general value or quality of the educational experiences [the Defendant] provides." (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 11.) But the inquiries here are more binary than the Defendant's framing suggests: Did a contract exist? If so, did the Defendant materially breached that contract? The Plaintiffs agree with this perspective; they argue the relevant inquiry is "whether Emory delivered on its promised in-person education." Because judicial intervention here would not require continuous judicial intrusion, and because a court can properly and justly evaluate the dispute, this Court declines the Defendant's invitation to defer to its decision-making without assessing the merits of the Plaintiffs' claims.

However, the Court notes that this finding "may well be a double-edged sword" for the Plaintiffs. *Rosado v. Barry Univ. Inc.*, Civ. A. No. 1:20-CV-21813, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020). While limiting the inquiry to these narrow questions allows the Court to evaluate this dispute, it also limits the scope of any relevant breach. As the Court moves to evaluate the Plaintiffs' contract claims, it will only evaluate the alleged breach of a promise for in-person education, rather than whether the Defendant's pandemic response resulted in a poorer educational experience than the Plaintiffs anticipated.

### C. Breach of Express Contract

In seeking to dismiss Plaintiff Doe's breach of express contract claims, the Defendant argues that the Plaintiff fails to sufficiently allege any required element of his claim. (*Id.* at 16–21.) In response, the Plaintiff points to persuasive authority to argue she has sufficiently pleaded these requirements. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 11–21.) The parties agree upon the elements of a breach of contract claim in Georgia: "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Trust Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015). To survive the Defendant's Motion to Dismiss, the Plaintiff must sufficiently plead all three of these elements; her conclusory allegations that the parties contracted with each other is a legal conclusion this Court will ignore. *Iqbal*, 129 S. Ct. at 1949–50.

**\*5** Under Georgia law, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. The Defendant first argues that "the [Amended] Complaint fails to allege Emory's assent to be bound to the terms Plaintiffs claim to have been breached." (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 16.) Further, the Defendant argues that the Plaintiff Doe has "failed to allege [her] own assent to the statements" made by the Defendant. (Def.'s Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 5.) In response, the Plaintiff argues she alleged a mutual agreement for in-person instruction, and that this agreement arises from the Defendant's published catalog. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 16–17.) However, like her allegations of a contract, Plaintiff Doe's allegations of mutual assent present a legal conclusion and are not binding on this Court.

Mutual assent, or a meeting of the minds, "is the first requirement of the law relative to contracts." *Simmons v. McBride*, 228 Ga. App. 752, 753 (1997). To have an enforceable agreement, "the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent ... to the same thing in the same sense, and their minds must meet as to all the terms." *Id.* (internal quotation marks and punctuation omitted); *see also* O.C.G.A. § 13-3-2 (requiring mutual assent for a contract to become enforceable). With regards to the assent requirement:

> [Georgia] courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. Further, ... the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a

party has assented to the contract is generally a matter for the jury.

*Turner Broad. Sys., Inc. v. McDavid*, 303 Ga. App. 593, 597 (2010) (internal quotation marks omitted). Applying this type of standard, one involving objective theories and reasonable people, is inapposite at this stage in the litigation. To survive the Defendant's Motion to Dismiss, the Plaintiffs merely must plead factual allegations that could plausibly indicate mutual assent to provide in-person instruction.

The Plaintiffs point to various communications published by the Defendant as offers to provide in-person education to its students. However, many of these statements have no such legal effect. The Amended Complaint highlights passages from the Defendant's website and catalog which describe the campus' physical beauty, the value of the school's community and residential life, and opportunities for student-faculty interaction. (Am. Compl. ¶¶ 27–33, 41–47.) However, these promotional statements merely describe these features and opportunities, and there is no language identified that indicates a promise to provide in-person education. While these statements might conjure images of the typical academic, residential, and social opportunities enjoyed by college students, these statements cannot be deemed a legal offer. Instead, these promotional statements are essentially advertising materials, which do not constitute offers to form express contracts under longstanding Georgia law. *See Georgian Co. v. Bloom*, 27 Ga. App. 468, 468 (1927); *see also Uhlig v. Darby Bank & Trust Co.*, 556 F. App'x 883, 888 (11th Cir. 2014) (ratifying the *Georgian Co.* decision). Additionally, the Amended Complaint alleges that students had a reasonable reliance on the "Defendant's usual and customary practice of providing on-campus courses." (Am. Compl. ¶ 109.) But the Plaintiffs' reasonable reliance on the Defendant's usual practice is not an element of formation or breach of an express contract, and the Plaintiffs do not clarify how such a showing would create an enforceable express contract. Generally, custom can interpret, but not create, a contract. *See Newark Fire Ins. Co. v. Smith*, 167 S.E. 79, 80 (Ga. 1932) ("Where there is no contract, proof of usage will not make one." (internal quotation marks omitted)). Thus, the Defendant's usual practice and the Plaintiffs' resulting reliance do not establish the existence of an express contract.

**\*6** Out of all the statements identified by the Plaintiffs, only one can support an allegation of the Defendant's offer of an in-person education: the course webpages indicating the "Instruction Method" as "In Person." (Am. Compl. ¶ 35.) Because this statement explicitly indicates the courses will be taught in-person, the Plaintiffs have sufficiently pleaded an offer made by the Defendant. However, though the Amended Complaint is replete with allegations of courses transitioning from in-person to virtual, there is a lack of allegations regarding the Plaintiffs' knowledge of the Defendant's offer and their acceptance of that offer. For example, the Amended Complaint alleges that English 211W, a class called "Literature and the Arts" offered in the Spring 2020 semester, listed its "Instruction Method" as "In Person." (*Id.*) But there are no allegations that Plaintiff Doe was aware of the Defendant's alleged offer for in-person instruction of any classes, that she accepted these offers, or that any class she participated in held itself out as in-person before transitioning to virtual learning. Without these specific allegations, Plaintiff Doe—the one named Plaintiff with standing to bring an express breach of contract claim—has not sufficiently alleged facts that indicate her own assent to Emory's alleged offer of in-person instruction. Without allegations of her own assent, Plaintiff Doe has not sufficiently pleaded a valid express contract.

This failure to allege how the Defendant's online transition affected her education extends to another critical element of her breach of contract claim: breach. Without identifying what courses were offered "In Person" before moving online, Plaintiff Doe has not sufficiently alleged the Defendant's breach of the alleged contract. (*Id.* ¶ 35.) However, these deficiencies are factual, not legal. Because the Court believes Plaintiff Doe could sufficiently plead a breach of express contract claim if she presented currently missing facts, this Court dismisses her breach of contract claim without prejudice. (*See* Def.'s Reply Br. in Supp. of Def.'s Mot. to Dismiss, Ex. A, at 2 (dismissing without prejudice and granting leave to amend under similar circumstances).) This Court will give Plaintiff Doe leave to amend her complaint in accordance with the discussion above, and that pleading is due within 14 days of this Order. *See* Fed. R. Civ. P. 15(a)(2).

**D. Breach of Implied Contract**

"Under Georgia law, an implied-in-fact contract is one not one created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice." *Irwin v. RBS Worldpay, Inc.*, Civ. A. No. 1:09-CV-0033, 2010 WL 11570892, at \*6 (N.D. Ga. Feb 5, 2010) (citing *Classic Restorations, Inc. v. Bean*, 272 S.E. 2d 557 (Ga. Ct. App. 1980)). Because implied contracts "arise from the nonverbal conduct of the parties," the Defendant's customary practice of

providing in-person instruction after the payment of tuition could plausibly give rise to an implied contract under Georgia law. *See J.M. Clayton Co. v. Martin*, 177 Ga. App. 228, 231 (1985) (noting that "a continued course of dealing may suggest an implied contract"). Additionally, though the Defendant's promotional statements cannot represent an offer to form an express contract, as noted above, these statements can help define the scope of any implied contract. *See Newark Fire Ins. Co.*, 167 S.E. at 80. But no analysis of these facts is undertaken at the motion to dismiss stage. At this time, the Court merely finds that the Defendant's customary practice and the Plaintiffs' payment of tuition represent sufficient factual allegations of mutual assent to an implied contract. The Plaintiffs have also sufficiently alleged a breach of that contract and damages. (Am. Compl. ¶¶ 122–23.) The Plaintiffs' breach of implied contract claim can proceed at this stage.

This Court will pause to note one element of Georgia law regarding implied contracts: "There cannot be an express and implied contract for the same thing existing at the same time between the same parties." *Georgia Real Estate Props., Inc. v. Lindwall*, 303 Ga. App. 12, 15 (2010) (internal quotation marks omitted). Because neither of the Plaintiffs have pleaded a sufficient express contract claim, this feature of Georgia law is not an issue at this moment, and there is no apparent bar on pleading these claims in the alternative. *Cf. Davidson*, 609 F. App'x at 999 (allowing express and implied contract claims to coexist at the motion to dismiss stage when the nature of the contract is unclear). However, this Court will not allow any recovery for both express and implied contract claims if properly pleaded.

### E. The Plaintiffs' Unjust Enrichment Claim

**\*7** In Georgia, unjust enrichment is not an independent tort, but rather "an equitable principle that may be applied when there is no valid written contract between the parties." *Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 216 (Ga. App. 2020) (internal quotation marks and punctuation omitted).

> A claim for unjust enrichment exists where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it.

*Id.* (internal quotation marks and punctuation omitted). Here, the Plaintiffs have sufficiently alleged the required factual elements to pursue this equitable claim. The Plaintiffs allege that they conferred a benefit upon the Defendant in exchange for in-person services and that the Defendant failed to reject that benefit. (Am. Compl. ¶¶ 128–132.) Without challenging the factual sufficiency of the Plaintiffs' claims, the Defendant argues that because both sides agree that the parties' relationship is contractual by nature, any unjust enrichment claims are barred. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 22.) The Defendant claims that "the substantive basis of the [Plaintiffs'] equitable claims assumes the existence of an implied contract," and this Court cannot deem this issue "a mere pleading error." (Def.'s Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 14–15.)

The Plaintiffs' claims in this suit are on a collision course, as Georgia courts reject unjust enrichment claims where express or implied contracts exist. *See Davidson*, 609 F. App'x at 998 ("When an implied-in-fact contract exists, a plaintiff may recover under a theory of quantum meruit but not unjust enrichment."). The question before the Court is whether dismissal of the Plaintiffs' unjust enrichment claim is premature at this stage:

> Generally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint. The claim may be adequately stated, as it is here, but in addition to the claim the complaint may include matters of avoidance that preclude the pleader's ability to recover. When this occurs,

> the complaint has a built-in defense and is essentially self-defeating.

*Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) (internal citations omitted). Here, the unjust enrichment claim is sufficiently pleaded, but so is the Plaintiffs' breach of implied contract, which bars unjust enrichment claims in Georgia. Apparently anticipating the Defendant's argument here, the Plaintiffs note the possibility of their contract claims failing, and they make this equitable claim assuming no contract exists. (Am. Compl. ¶ 127.) But the Eleventh Circuit has ruled that where a complaint "must be read as evincing some type of contract between" the parties, unjust enrichment claims are precluded. See *Davidson*, 609 F. App'x at 998. As a result of this binding precedent and the Plaintiffs' properly pleaded claim for breach of an implied contract, their claim for unjust enrichment is legally deficient and must be dismissed with prejudice.

### F. The Plaintiffs' Money Had And Received Claim

**\*8** Under Georgia law, a claim for money had and received "contains the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." *Wilson v. Wernowksy*, 355 Ga. App. 834, 843 (2020) (internal quotation marks omitted). The Plaintiffs here have sufficiently pleaded these elements. The Plaintiffs allege that they gave the Defendant money, that the Defendant wrongfully retained that money, that the Plaintiffs demanded return of the money, and that the money has not been returned. (Am. Compl. ¶¶ 139–42.) In response, the Defendant argues that this equitable claim is duplicative of the Plaintiffs' unjust enrichment claim. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 21–22.) Georgia courts have identified claims for unjust enrichment claims and money had and received as one-in-the-same. *See National City Bank v. Busbin*, 175 Ga. App. 103, 107 (1985) ("[W]e note that these are not separate causes of action. An action for money had and received is merely one form of action to recover damages based on unjust enrichment."). However, the Georgia Supreme Court has treated these claims as distinct. See *City of Atlanta v. Hotels.com*, 289 Ga. 323, 328 (2011). Additionally, Georgia courts have historically allowed claims for money had and received to proceed despite the existence of an implied contract. *See Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2001) ("An action for money had and received sounds in assumpsit and grows out of privity of contract, express or implied; but absent an actual contractual relationship, the law will imply a quasi contractual relationship to support the action."); *see also Fain v. Neal*, 97 Ga. App. 497, 499 (1958) (reversing the trial court's dismissal despite the existence of a contract between the parties).[3] Because of the Georgia Supreme Court's treatment of these claims as distinct and Georgia decisions allowing such claims to proceed despite enforceable contracts, this Court will treat the Plaintiffs' money had and received claim as distinct from its unjust enrichment claim. The Plaintiffs have pleaded sufficient facts to state a claim here, and the Defendant's legal arguments are unavailing. Thus, the Plaintiffs' claim for money had and received can proceed at this stage.[4]

### IV. Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss [Doc. 33] is GRANTED in part and DENIED in part. The Defendant's Motion to Dismiss is GRANTED as to Count I, and this claim is dismissed without prejudice. The Plaintiffs can amend their pleadings in accordance with this Order within 14 days. The Defendant's Motion to Dismiss is GRANTED as to Count III, and this claim is dismissed with prejudice. The Defendant's Motion to Dismiss is DENIED as to Counts II and IV.

SO ORDERED, this 22 day of January, 2021.

**All Citations**

Slip Copy, 2021 WL 358391

### Footnotes

| | |
|---|---|
| 1 | The Plaintiffs, relying on a California case, argue that a non-minimal departure from a projected course of study would entitle the student (*or his parent who paid for it*) to recover the tuition paid or any part of it. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 10 (quoting [Zumbrun v. Univ. of S. Cal., 25 Cal. App. 3d 1, 11 (1972)](#)).) That is not what the case says. Instead, the decision noted that "[i]t has been held that a minimal departure from a projected course of study does not entitle the student (or his parent who paid for it) to recover the tuition paid or any part of it." [Zumbrun, 25 Cal. App. 3d at 11](#). Finding that courts have ruled against recovery for a "minimal departure" does not mean courts have ruled for recovery in cases of a "non-minimal departure." As a result, this Court finds this authority unpersuasive. |
| 2 | Schultz also argues that should he lack standing on any claim here, the Court should substitute Schultz's daughter in his place. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 10–11.) The case cited in support relies on a specific federal statute, and in the action here, the Court need not "substitute" Schultz's daughter to remedy his lack of standing. |
| 3 | The Defendant cites [S.B. v. Tenet Healthcare Corp., No. 1:17-CV-0007, 2017 WL 6389675, at *7 (N.D. Ga. Aug. 11, 2017)](#), *aff'd*, [732 F. App'x 721 (11th Cir. 2018)](#) for the proposition that a contract bars a claim for money had and received. The Eleventh Circuit affirmed the court's dismissal in this case because the claims were untimely, and did not address the contract issue. Therefore, there is no binding Eleventh Circuit precedent on whether a contract bars a claim for money had and received, and as described above, Georgia courts have not applied such a bar. Therefore, at this stage, this Court cannot deem the Plaintiffs' claims here legally deficient. |
| 4 | The Defendant also makes several arguments regarding the Plaintiffs' failure to state a claim for damages that includes Fall 2020 tuition payments of other fees. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 23–25.) Because these arguments concern the scope of any alleged contract and the amount of available damages, not the underlying sufficiency of the Plaintiffs' claims, the Court expresses no opinion on the merits of those arguments at this time. |

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.