# EXHIBIT 7

2021 WL 308940
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.

Carson LITTLE, Plaintiff,
v.
GRAND CANYON UNIVERSITY, Defendant.

No. CV-20-00795-PHX-SMB
|
Signed 01/29/2021

**Synopsis**
**Background:** Student brought putative class action against university asserting claims under Arizona law for breach of contract, unjust enrichment, and conversion as a result of university's failure to issue students a partial refund of housing expenses, meal plans, and student fees after university sent students home in response to the COVID-19 pandemic. University filed motion to dismiss for failure to state a claim.

**Holdings:** The District Court, Susan M. Brnovich, J., held that:

[1] student adequately alleged breach of contract claim for housing and meal plan costs;

[2] student adequately alleged breach of contract claim for fees;

[3] student alleged a plausible claim for unjust enrichment for room and board and for fees; and

[4] student failed to sufficiently allege conversion claim.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim.

West Headnotes (20)

[1]  **Federal Civil Procedure** ⚬ Insufficiency in general

To survive a motion to dismiss for failure to state a claim, a complaint must meet requirements of pleading rule which requires a short and plain statement of the claim showing that the pleader is entitled to relief, so that the defendant has fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2), 12(b)(6).

[2]  **Federal Civil Procedure** ⚬ Insufficiency in general

Dismissal for failure to state a claim can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Fed. R. Civ. P. 12(b)(6).

[3]  **Federal Civil Procedure** ⚬ Insufficiency in general

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to survive a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

[4]  **Federal Civil Procedure** ⚬ Insufficiency in general
**Federal Civil Procedure** ⚬ Matters deemed admitted; acceptance as true of allegations in complaint

Legal conclusions couched as factual allegations are not given a presumption of truthfulness, and conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss. Fed. R. Civ. P. 12(b)(6).

[5]  **Federal Civil Procedure** ⚬ Matters considered in general
**Federal Civil Procedure** ⚬ Motion

When ruling on a motion to dismiss, a court may consider materials—documents attached to the complaint, documents incorporated by reference

in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(b)(6).

### [6] Federal Civil Procedure ⟶ Matters considered in general

Courts generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification.

Fed. R. Civ. P. 12(b)(6).

### [7] Contracts ⟶ Grounds of action

To state a cause of action for breach of contract under Arizona law, a plaintiff must plead facts alleging: (1) a contract exists between plaintiff and defendant; (2) defendant breached the contract; and (3) breach resulted in damage to plaintiff.

### [8] Contracts ⟶ Pleading contract or specifications

To state a cause of action for breach of contract under Arizona law, plaintiff need not allege the terms of the alleged contract with precision, but court must be able generally to discern at least what material obligation of the contract defendant allegedly breached.

### [9] Education ⟶ Refund

Under Arizona law, student adequately alleged breach of contract claim for housing and meal plan costs against university arising from university's failure to issue partial refund to students sent home in response to the COVID-19 pandemic, although complaint contained only rough details regarding contract, breach, and damages; student alleged that he entered into contract with university which provided that he would pay money in exchange for housing and a meal plan, that he paid university, that university did not provide housing for entire semester, that university retained money paid, and that he was deprived of value paid for room and board while university retained value.

### [10] Education ⟶ Refund

Under Arizona law, student adequately alleged breach of contract claim for fees against university arising from university's failure to issue partial refund to students sent home in response to the COVID-19 pandemic; student alleged that he entered into contract with university which provided that he would pay fees to university and in exchange university would provide services, student detailed fees which he paid, student alleged that university stopped providing services and moved classes online, and student alleged he was deprived of value of services to fees he paid were intended to cover.

1 Cases that cite this headnote

### [11] Implied and Constructive Contracts ⟶ Unjust enrichment

To prevail on a claim of unjust enrichment under Arizona law, a plaintiff must prove five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.

### [12] Implied and Constructive Contracts ⟶ Unjust enrichment

Under Arizona law, a claim for unjust enrichment may exist where a person confers a benefit to his detriment on another and allowing the other to retain that benefit would be unjust.

### [13] Implied and Constructive Contracts ⟶ Unjust enrichment

Under Arizona law, unjust enrichment is a flexible equitable remedy which is available whenever the court finds that the defendant is obliged by the ties of natural justice and equity to make compensation for the benefits received.

[14] **Federal Civil Procedure** ⟠ Alternate, Hypothetical and Inconsistent Claims

A party may plead an unjust enrichment claim in the alternative even if they are alleging the existence of a contract governing the dispute. Fed. R. Civ. P. 8(d)(2).

[15] **Implied and Constructive Contracts** ⟠ Unjust enrichment

Under Arizona law, student alleged a plausible claim for unjust enrichment for room and board and for fees arising from university's failure to issue partial refund to students sent home in response to the COVID-19 pandemic; student alleged that he paid cost of room and board and fees for spring semester, that university failed to provide housing for a portion of spring semester, that university failed to provide services for which fees were paid for entire semester when university recommended, if not required, students to return home, that university provided inadequate credits for housing costs and failed to return any portion of fees for spring semester, and that university did not have justification for enrichment.

[16] **Conversion and Civil Theft** ⟠ Assertion of ownership or control in general

Under Arizona law, "conversion" is defined as an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.

[17] **Conversion and Civil Theft** ⟠ Title and Right to Possession of Plaintiff

In order to maintain an action for conversion under Arizona law, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion.

[18] **Conversion and Civil Theft** ⟠ Money and commercial paper;  debt

Under Arizona law, a conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, but money can be the subject of a conversion claim if the money can be described, identified, or segregated, and an obligation to treat it in a specific manner is established.

[19] **Conversion and Civil Theft** ⟠ Property Subject of Conversion or Theft

Arizona has no tort of conversion of real property.

[20] **Conversion and Civil Theft** ⟠ Money and commercial paper;  debt

Under Arizona law, student failed to sufficiently allege conversion claim against university arising from university's failure to issue partial refund to students sent home in response to the COVID-19 pandemic, where student failed to show that money he paid for room and board and fees could be described, identified, or segregated, and student failed to establish that university had an obligation to treat funds in a specific manner.

**Attorneys and Law Firms**

Adam J. Levitt, Pro Hac Vice, Amy E. Keller, Pro Hac Vice, Laura E. Reasons, Pro Hac Vice, DiCello Levitt Gutzler LLC, Matthew S. Miller, Pro Hac Vice, Matthew S Miller LLC, Chicago, IL, Robert David Ryan, Law Offices of Robert D. Ryan PLLC, Phoenix, AZ, for Plaintiff.

Adam Elliott Lang, Jennifer Hadley Catero, Snell & Wilmer LLP, Kathryn Ann Honecker, Sean Patrick Healy, Lewis Brisbois Bisgaard & Smith LLP, Phoenix, AZ, Jon Peter Kardassakis, Pro Hac Vice, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, CA, for Defendant.

**ORDER**

Susan M. Brnovich, United States District Judge

*1 Defendant Grand Canyon University ("GCU"), filed its Motion to Dismiss, ("Motion"; Doc. 14), alleging that Plaintiff Carson Little's Class Action Complaint, ("Complaint"; Doc. 1), should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P. Plaintiff responded, (Doc. 19), and Defendant replied.[1] (Doc. 23.) The Court is also in receipt of the parties' notices of supplemental authority, including one objection to Plaintiff's notices of supplemental authority, (Docs. 25, 26, 27, 28, 30, and 31), and Defendant's Request for Judicial Notice.[2] (Doc. 15.) Oral argument on the Motion was held on January 28, 2021. For the reasons discussed below, the Court will grant in part and deny in part Defendant's Motion.

**I. BACKGROUND**

Plaintiff filed his Complaint against GCU alleging breach of contract, unjust enrichment, and conversion. (Doc. 1.) Each of Plaintiff's claims is based on GCU's alleged failure to issue students a partial refund of housing expenses, meal plans, and student fees after GCU sent students home in response to the COVID-19 pandemic during the Spring 2020 semester. (*Id.*) Plaintiff's Complaint seeks to bring these claims on behalf of two classes: (1) those who paid room and board fees to GCU and (2) for those who paid fees during the Spring 2020 semester. (*Id.* ¶ 51.) The Complaints factual allegations include the following:

Plaintiff is a GCU student who paid the cost of room and board and fees for the Spring 2020 semester. (*Id.* ¶ 9.) Plaintiff lists in the Complaint fees which students, including himself, pay, but he did not specify which ones he paid for the 2019-2020 academic year. (*Id.* ¶ 21.) He also lists housing and meal plan costs, although he does not specifically allege how much he paid in housing costs. (*Id.* ¶¶ 19, 20.) Students at GCU moved into on-campus housing for the Spring 2020 semester on or around January 4 and 5, 2020. (*Id.* ¶ 16.) Classes began on January 6, 2020. (*Id.*) Prior to the COVID-19 outbreak, non-graduating students were required to move out of campus housing by April 23, 2020. (*Id.*) Graduating students were required to move out by April 25, 2020. (*Id.*) However, on or around March 12, 2020, GCU announced that due to the COVID-19 pandemic, all but a few classes would be moved online for the remainder of the Spring 2020 semester. (*Id.* ¶ 2, 33.) At this time, GCU encouraged students to return to their homes and complete their coursework online. (*Id.* ¶ 33.) In addition, GCU postponed all athletic events, fine arts performances, and co-curricular activities. (*Id.*) On March 17, 2020, GCU canceled all large-group gatherings on campus and closed many of its facilities such as fitness centers, the E-sports facility, the commuter lounge, the veterans center, and other "high-risk areas." (*Id.* ¶ 35.) On March 18, 2020, GCU again informed students that they were "highly encouraged to return to their homes to finish out the semester in an online learning environment if it [was] not imperative that they remain on campus." (*Id.* ¶ 35.) At that time, GCU closed additional campus facilities. (*Id.*) On March 20, 2020, GCU again urged students not to return to campus following spring break. (*Id.*) On March 21, 2020, GCU told students, "We are asking all students – other than international students who can not travel to their home countries and students who have special circumstances – to leave campus as soon as possible." (*Id.* ¶ 36.) The communication also stated that if students did stay, they would be restricted to their rooms, the campus grocery/convenience store, and the health and wellness clinic. (*Id.*) It also stated that students who remained on campus could expect a significant cutback of food services beginning on March 23, 2020. (*Id.* ¶ 36.) The same communication stated that, "If students, other than international students, have extenuating circumstances, they can ask for a waiver to remain on campus by inputting that information into the personal departure plan located in their housing portal." (*Id.* at n. 15.) By April 2, 2020, 90% of GCU's employees were working from home, which Plaintiff states illustrates the "near total shutdown of campus." (*Id.* ¶ 45.)

*2 On March 23, 2020, GCU announced that limited credits would be offered to students who moved out of their on-campus housing by March 25, 2020, with credits ranging from $260-$450 based on dorm location and occupancy. (*Id.* ¶ 39.) Plaintiff alleges that the credits offered by GCU are insufficient because they are not the full-prorated unused portion of students' room and board payments. (*Id.* ¶ 42.) GCU also announced that in lieu of providing refunds for meal plans, any "Dining Dollars" left in students' accounts would roll over to the next semester. (*Id.* ¶ 41.) Graduating students would have their balance of the Dining Dollars refunded at the end of the semester. (*Id.*) Plaintiff alleges that the rollover plan for the Dining Dollars was insufficient for several reasons. (*Id.* ¶ 43.) GCU did not provide or offer students any refund of miscellaneous fees they paid for the Spring 2020 semester. (*Id.* ¶ 44.) Despite complaints and

demands by students and parents, GCU stood by its policy of refusing refunds. (*Id.* ¶ 49.)

Plaintiff left campus on March 13, 2020 and did not return to campus in accordance with GCU's policies. (*Id.* ¶ 9.)

Plaintiff seeks the "disgorgement" of the pro-rated amount of monies paid for fees, room and board, and meal plans from GCU and seeks relief on behalf of two classes. (*Id.* ¶¶ 50-51.) The first proposed class (the "Room and Board Class") consists of people who paid the costs of room and board for or on behalf of students at GCU for the Spring 2020 semester who moved out of their on-campus housing prior to the completion of the semester due to GCU's COVID-19 policies. (*Id.* ¶ 51.) The second class (the "Fee Class") consists of people who paid fees for or on behalf of students enrolled in classes at GCU for the Spring 2020 semester. (*Id.*)

## II. LEGAL STANDARD

**[1] [2] [3]** To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 555 n.3, 127 S.Ct. 1955 (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1202, at 94–95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

**\*3 [4] [5] [6]** In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. Courts "generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification." *Barth v. Firestone*

*Tire and Rubber Co.*, 673 F.Supp. 1466, 1476 (N.D. Cal. 1987).

### III. DISCUSSION

GCU moves to dismiss Plaintiff's Complaint under Rule 12(b)(6) arguing that each of Plaintiff's claims fails as a matter of law. GCU argues that Plaintiff has failed to plead its breach of contract claims because he has failed to identify "1) any specific contract or 2) the breach of any contractual obligation." (Doc. 14 at 9.) For Plaintiff's unjust enrichment claims, GCU argues that Plaintiff has failed to allege the necessary elements of enrichment and an unjust impoverishment. (*Id.* at 12.) Lastly, GCU argues that the Plaintiff's conversion claims fail because " '[a] conversion claim cannot be maintained ... to collect on a debt that could be paid by money generally.' " (*Id.* at 13 (citing *Case Corp. v. Gehrke*, 208 Ariz. 140, 143, 91 P.3d 362 (App. 2004).) Plaintiff opposes the Motion for each claim, and in the alternative, asks for leave to amend to correct any deficiencies the Court identifies. (Doc. 19.)

#### A. Breach of Contract

**[7]** **[8]** To state a cause of action for breach of contract, the Plaintiff must plead facts alleging "(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Dylan Consulting Servs. LLC v. SingleCare Servs. LLC*, No. CV-16-02984-PHX-GMS, 2018 WL 1510440, at *2 (D. Ariz. Mar. 27, 2018). A plaintiff need not allege the terms of the alleged contract with precision, but " 'the Court must be able generally to discern at least what material obligation of the contract defendant allegedly breached.' " *Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-CV-00624-LB, 2016 WL 6524396, at *3 (N.D. Cal. Nov. 3, 2016) (quoting *James River Ins. Co. v. DCMI, Inc.*, No. C 11-06345 WHA, 2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012)).

GCU first argues that it could not have breached a contract to Plaintiff because it never required that students leave campus and the school continued to provide food, housing, and services to those students who remained on campus. (Doc. 14 at 10.) However, the allegations of the Complaint, which the Court must accept as true, show otherwise. Plaintiff alleges in the Complaint that as early as March 12, 2020, GCU moved almost all classes online and encouraged students to return home to complete their coursework online. (Doc. 1 ¶ 33.) Plaintiff alleges that on March 18, 2020, GCU "highly encouraged" students to return home and finish the semester online. (*Id.* ¶ 35.) The Complaint also states that on March 21, 2020, GCU told students, "We are asking all students – other than international students who can not travel to their home countries and students who have special circumstances – to leave campus as soon as possible." (*Id.* ¶ 36). The GCU press release referenced in Plaintiff's Complaint states, "If students, other than international students, have extenuating circumstances, they can *ask for a waiver* to remain on campus by inputting that information into the personal departure plan located in their housing portal." (*Id.* at n. 15.) (emphasis added) In other words, students were at least highly encouraged to go home and finish the remainder of their semester online, and GCU even required a waiver to stay on campus if students were from the United States. Further, the Court does not find GCU's point persuasive that a breach of contract did not occur because Plaintiff left campus on March 13, 2020 and never returned. He has alleged sufficient facts for a plausible argument that he was not able to return because the campus was effectively shut down and students had to have a waiver to stay on campus.

**\*4** GCU also argues that Plaintiff cannot advance his breach of contract claims because "all refund deadlines had long passed—in January 2020." (Doc. 14 at 10.) However, this fact is not alleged in the Complaint and is not contained on the webpage referenced by Plaintiff's Complaint. (Doc. 1 ¶¶ 19-21.) Even if it were, as Plaintiff correctly points out, the refund policy "refers to situations where students choose not to remain enrolled or continue the contractual relationship." (Doc. 19 at 11.) Thus, the Court is not persuaded by this argument.

**[9]** Plaintiff has adequately alleged his breach of contract claims. Regarding his breach of contract claim for room and board, Plaintiff alleges that, "Plaintiff and the other members of the Room and Board Class entered into contracts with GCU, which provided that Plaintiff and other members of the Room and Board Class would pay monies, and, in exchange, GCU would provide housing and a meal plan." (Doc. 1 ¶ 62.) Plaintiff further alleges that, Plaintiff alleges that he and other members of the class fulfilled their end of the bargain by paying GCU, but that GCU did not provide housing for the entire semester. (*Id.* ¶ 63.) Despite this, Plaintiff alleges, "GCU has retained the value of monies paid by Plaintiff and other Class members for room and board and other fees, while failing to provide the services for which those fees were paid." (*Id.* ¶ 46.) Plaintiff then alleges that,

"Plaintiff and the other members of the Room and Board Class have been damaged in that they have been deprived of the value they paid for room and board while GCU retained that value." (*Id.* ¶ 66.) The allegations contained in the Complaint allege only rough details regarding the contract that Plaintiff entered with GCU, the breach, and the resulting damages. Indeed, allegations such as how much Plaintiff paid for room and board, the date the contract was entered, and the exact language of the contractual provisions at issue are not contained in the Complaint. Nonetheless, taking the allegations in the Complaint as true, Plaintiff has adequately alleged facts satisfying all elements necessary for his breach of contract claim for housing and meal plan costs.

[10] Similarly, for the breach of contract claim for the fees, Plaintiff alleges that, "Plaintiff and the other members of the Fee Class entered into contracts with GCU which provided that Plaintiff and the other members of Fee Class would pay fees for or on behalf of students, and in exchange, GCU would provide services to students." (*Id.* ¶ 70.) Plaintiff details the fees which he and the class paid. (*Id.* ¶ 21.) Plaintiff next alleges he and other students fulfilled their end of the bargain by paying, but that GCU did not when it stopped providing the services and moved classes online. (*Id.* ¶¶ 71-72.) Plaintiff alleges that he and other class members were damaged by the breach because they were "deprived of the value of the services the fees they paid were intended to cover." (*Id.* ¶ 75.) Thus, taking the allegations as true, Plaintiff has sufficiently pled a breach of contract claim for fees.

### B. Unjust Enrichment

[11] [12] [13] [14] To prevail on a claim of unjust enrichment under Arizona law, a Plaintiff must prove five elements: " '(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.' " *Perez v. First Am. Title Ins. Co.*, 810 F.Supp.2d 986, 991 (D. Ariz. 2011) (quoting *Freeman v. Sorchych*, 226 Ariz. 242, 245 P.3d 927, 936 (App. 2011)). "A claim for unjust enrichment may exist where a person confers a benefit to his detriment on another and allowing the other to retain that benefit would be unjust." *Baughman v. Roadrunner Commc'ns, LLC*, No. CV-12-565-PHX-SMM, 2014 WL 3955262, at *4 (D. Ariz. Aug. 13, 2014) (citing *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354, 732 P.2d 579 (App. 1986)). Under Arizona law, unjust enrichment is a flexible equitable remedy which is " 'available whenever the court finds that the defendant ... is obliged by the ties of natural justice and equity to make compensation for the benefits received.' " *Isofoton, S.A. v. Giremberk*, No. CV-04-0798-PHX-ROS, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006) (quoting *Arnold & Assocs., Inc. v. Misys Healthcare Systems*, 275 F.Supp.2d 1013, 1024 (D. Ariz. 2003)) (internal quotation marks omitted). Under Rule 8(d)(2), Fed. R. Civ. P., a party may plead an unjust enrichment claim in the alternative even if they are alleging the existence of a contract governing the dispute. *See, e.g., Isofoton, S.A.*, 2006 WL 1516026, at *3.

*5 [15] GCU argues that Plaintiff's claims for unjust enrichment must be dismissed because there was not *unjust* enrichment or impoverishment alleged. (Doc. 14 at 12; Doc. 23 at 6 (emphasis added).) Taking all well-pled allegations as true, Plaintiff has sufficiently pled a cause of action for unjust enrichment. Plaintiff alleges that he paid the cost of room and board and fees for the Spring 2020 semester. (Doc. 1 ¶ 9.) Plaintiff pled that GCU failed to provide housing for a portion of the Spring 2020 semester and failed to provide the services for which his fees were paid for the entire semester when GCU strongly recommended, if not required, students to return home in March 2020. (*Id.* ¶¶ 32-37.) The Complaint also alleges that GCU provided inadequate credits for housing costs and failed to return any portion of the fees for the Spring 2020 semester. (*Id.* ¶¶ 39-44.) Further, the Complaint alleges that GCU does not have a justification for the enrichment. (*Id.* ¶ 46 ("[GCU] does not have the right to retain the moneys families paid for those services.")). There was necessarily a connection between the enrichment and the impoverishment. GCU's argument that the enrichment was not unjust is also without merit because Plaintiff alleges that GCU failed to provide all the room and board, meal services, and services for fees it promised without justification. (*Id.* ¶ 46.) The Court would have to weigh the merits of the case for GCU to succeed at this point and that would be inappropriate at this stage. After examining the allegations in the Complaint, the Court finds that Plaintiff has alleged a plausible claim for unjust enrichment both for his room and board claim (Third Claim for Relief) and for his fees claim (Fourth Claim for Relief).

### C. Conversion [3]

[16] [17] [18] [19] Conversion is defined as " 'an act of wrongful dominion or control over personal property in

denial of or inconsistent with the rights of another.' " *Case Corp. v. Gehrke*, 208 Ariz. 140, 143, 91 P.3d 362 (App. 2004) (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335, 802 P.2d 1032 (App. 1990)). In order to maintain an action for conversion, "a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Id.* (citations omitted). A conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, but money can be the subject of a conversion claim if they money " 'can be described, identified or segregated, and an obligation to treat it in a specific manner is established.' " *Id.* (quoting *Autoville, Inc. v. Friedman*, 20 Ariz.App. 89, 91-92, 510 P.2d 400 (1973)). Arizona has no tort of conversion of real property. *Brosnahan v. JP Morgan Chase Bank*, No. CV09-8224-PCT-JAT, 2010 WL 4269562, at *4 (D. Ariz. Oct. 25, 2010) (citing *Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 207 P.3d 654, 659 (App. 2008)).

**[20]** GCU argues that Plaintiff's claims for conversion should be dismissed because (1) his constructive eviction from his campus housing constitutes an interest in real property, and (2) Plaintiff has failed to allege that the specific funds paid for fees and a meal plan are identifiable or segregated. (Doc. 14 at 14.) The Court need not address Defendant's first argument regarding real property because it is convinced by Defendant's second argument as to all money Plaintiff paid. Plaintiff has not shown that he was entitled to immediate possession of the money paid at the time of the conversion, nor does the Court believe that he could. Plaintiff's conversion claim is made to collect on an alleged debt owed to Plaintiff from GCU that could be satisfied by money generally. *See Case Corp.*, 208 Ariz. at 143, 91 P.3d 362. Therefore, Plaintiff must show that money he paid for room and board and fees can be described, identified, or segregated, and establish that GCU had an obligation to treat the funds in a specific manner. *Id.* Plaintiff's Complaint is devoid of any such allegations, and the Court doubts Plaintiff's ability to make such a showing if the Complaint were amended. Frankly, GCU could remedy their withholding of monies paid for housing, meal plans, and fees by issuing a partial refund to Plaintiff, and the Court can think of no reason that GCU would have the duty to treat the funds in a specific manner. Therefore, dismissal with prejudice of Plaintiff's conversion claims is proper.

## IV. CONCLUSION

For the reasons discussed above,

**\*6 IT IS ORDERED** granting in part and denying in part Defendant's Motion to Dismiss. (Doc. 14.) The claims for conversion are dismissed without leave to amend.

**All Citations**

--- F.Supp.3d ----, 2021 WL 308940

## Footnotes

1    Defendant initially filed its reply (Doc. 22) and later filed a Notice of Errata (Doc. 24) the same day explaining that the original reply had pagination issues. For the purposes of this Order, the Court will refer to Defendant's corrected reply. (Doc. 23.)

2    The Court declines Defendant's request to take judicial notice of Governor Ducey's Executive Order and the U.S. Department of Education's document, finding that doing so is unnecessary to resolve the Motion.

3    Plaintiff argues that Defendant waived its ability to argue that Plaintiff's claim for conversion of fees paid to GCU should be dismissed because GCU did not make the argument in their Motion. This is incorrect. GCU did make such an argument. (Doc. 14 at 14.)