# EXHIBIT 9

2021 WL 1099323 (Mass.Super.) (Trial Order)
Superior Court of Massachusetts.
Suffolk County

Spencer HOLMES and Student B, Plaintiffs,

v.

UNIVERSITY OF MASSACHUSETTS, Defendant.

No. 2084CV01025-B.
March 8, 2021.

**Memorandum of Rulings and Order on Defendant's Motion to Dismiss Amended Complaint (Paper 11)**

Christine M. Reach, Judge.

***1** This case is a putative class action against the University of Massachusetts (UMass) for its retention of the full amount of tuition and fees collected from students for the spring semester of 2020. In March, 2020, UMass ceased in-person teaching, transitioned to an on-line, remote learning model, and closed all of its on-campus facilities in response to the COVID-19 pandemic, and an order of the Governor of Massachusetts. The first Complaint, in four counts, was filed in May, 2020. Docket, Paper 1. The Amended Complaint filed in September, 2020 (in response to a served, but not filed, motion to dismiss, pursuant to Superior Court Rule 9A), contains the identical four counts, but has tripled in length. [1] Plaintiffs continue to seek "disgorgement of fees and monies paid by students, and their parents, guardians, and families for services not received." Amended Complaint, para. 5. Paper 8.

The legal theories are quite simple: breach of contract and unjust enrichment. UMass has moved to dismiss the Amended Complaint on the grounds that the Plaintiffs do not possess a contractual right to in-person learning, and/or that the doctrine of frustration of purpose precludes a successful claim for breach of contract. Memorandum in Support, at pages 8-9. It further argues there cannot be a claim for unjust enrichment, because Plaintiffs possess a putative contract remedy, and because nothing about UMass' behavior in response to the pandemic may be considered "unjust" as a matter of law. Id., at pages 18-19.

Following hearing February 16, 2021, and review of all appropriate authority, the Motion is **DENIED** for the reasons outlined below.

**Factual Allegations Material to the Claims**

In brief, the Plaintiffs allege they each paid to UMass tuition and certain fees, with the reasonable understanding, based on various communications, that they were paying for an on-campus learning experience, only to end up limited to a virtual, on-line experience entirely off-campus for the second half of the Spring 2020 semester — allegedly a less valuable product which should result in refunds to them. The details are complicated by the fact that UMass has five campuses, one of which (the Medical School) does not enroll undergraduates, and by the fact that different fees are described, and in fact apply to, many different instruction-related and fee-related services. See, e.g., Amended Complaint, paras. 7, 95-224.

**Discussion**

For reasons unclear, the parties' briefing is often lacking in Massachusetts appellate authority, despite the fact that Plaintiffs' case is brought on the basis of well-settled Massachusetts common law. Memorandum in Support, at pages 7-10, 13-16; Opposition, at pages 6-11, 13-16. [2]

### The Contract Counts (I - tuition, and III - fees)

**\*2**  Massachusetts law requires that a viable complaint for breach of contract plausibly plead: the existence of a valid agreement between the parties supported by consideration; the plaintiff was ready, willing and able to perform; the defendant breached the contract; and the plaintiff suffered harm as a result. Bulwer v. Mount Auburn Hospital, 473 Mass. 672, 690 (2016); Singarella v. City of Boston, 342 Mass. 385, 387 (1961); Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). By the time of the hearing on the Motion, the parties each began to acknowledge that Massachusetts also recognizes quasi or implied contracts. Salamon v. Terra, 394 Mass. 857, 859 (1985)".

The parties also now seemingly agree that express or implied contracts between students and their academic institutions are interpreted by the standard of reasonable expectation. Schaer v. Brandeis Univ., 432 Mass. 474, 478 (2000); MIT v. Guzman, 90 Mass. App. Ct. 1102 at 12-13 (2016)(Rule 1:28 decision)("the relationship … is essentially a contractual one," although "because the student-university relationship is unique, contract law need not be rigidly applied")(interior quotations omitted); Driscoll v. Trustees of Milton Academy, 70 Mass. App. Ct. 285, 293 (2007)("The Supreme Judicial Court established the standards for interpreting contract claims based on school handbooks in Schaer.... We therefore employ the standard of 'reasonable expectation —— what meaning the party making the manifestation, the [school], should reasonably expect the other party to give it.'").

As discussed at hearing, the particular terms of the parties' understanding(s) obviously matter. And it is the Plaintiffs' burden to identify preliminarily the source(s) of those understanding(s). The parties here appear to agree there is no one document that defines their relationship. With respect to their expectations in paying tuition, Plaintiffs point to the enrollment process which included reference to physical classroom locations, and their full access to campus for the first half of the spring semester. Amended Complaint, paras. 38-39, 121, 150, 184, 212. With respect to their expectations in paying various mandatory fees, Plaintiffs point to a variety of sources. Id., paras. 50-55, 66, 254-262.

In support of their contract claims generally, Plaintiffs argue that "the 56-page 282 paragraph Complaint is replete with quoted statements and promises from Defendant's various publications." Opposition, at page 11. Indeed it is. Unfortunately this plethora of information does not necessarily contribute to a clear statement of which terms might apply to which alleged understandings between the parties, be it with respect to tuition or to various fees. That said, it is clearly pleaded that "[p]laintiffs paid increased tuition and fees to enroll in the on-campus program." Id, paras. 38-46. It is not necessary or appropriate for purposes of the Motion before me at this time to determine precisely what collection of written documents or implied expectations might be viable. MIT, 90 Mass. App. Ct. at 13 ("the terms of the student-university relationship are informed by, inter alia, written policies."). Contrary to UMass' argument, my reading of our contract precedent is that an implied contract based on different facets of the parties' relationship would not be "making new law," or "wad[ing] into the question of how the University teaches its students." Memorandum in Support, at pages 16-17. [3]

**\*3**  Nor am I able to accept UMass's argument at this stage of the case that, "although … the University would like to return to teaching student on campus, there is no contractual right to on-campus learning … in the face of a global pandemic." Memorandum in Support at page 11. This argument conflates the issues. I am persuaded by the allegations of the Amended Complaint, and our available authority, that a contractual right to on-campus learning may well have existed in March, 2020. What becomes of that right or that understanding "in the face of a global pandemic" is a separate issue, not appropriately resolved pursuant to Mass.R.Civ.P. 12(b)(6).

UMass made a series of decisions about how to respond to the pandemic, while attempting to continue to provide an education to its students. It states in its defense that "[t]he University shifted with great speed to providing classes remotely - a costly and logistically difficult venture. Remarkably, students finished their course work during the spring semester, and seniors were able to graduate on time." Memorandum in Support, at page 1. While UMass is to be acknowledged for those accomplishments, one might argue they were the baseline of its duty as a public institution, and do not make the University a pandemic hero, any more than Plaintiffs' allegations serve to make the University a villain. More importantly, I must agree with the Plaintiffs that frustration of purpose is an affirmative defense to the breach of contract claim (Opposition, at pages 15-16), which cannot be determined at this stage of the pleading. [4]

**Accordingly, the contract claims (Count I with respect to tuition, and Count III with respect to fees) survive.** [5]

### The Unjust Enrichment Counts (II-tuition and IV-fees)

To state a claim for unjust enrichment a plaintiff must plausibly plead that: s/he conferred a benefit on the defendant; the defendant accepted the benefit; and the defendant's retention of the benefit would be inequitable without payment for that value. G4S Technology, LLC v. Massachusetts Technology Park Corp., 479 Mass. 721, 735 (2018)(purpose of quantum meruit doctrine and concept of unjust enrichment is to allow courts to produce a just result and to make the non-breaching party whole); Global Investors Agent Corp. v. National Fire Ins. Co., 76 Mass. App. Ct. 812, 826 (2010)(unjust enrichment requires more than benefit; the benefit must be unjust); Salamon v. Terra, 394 Mass. 857, 859 (1985)("The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party."). This claim is based on "the retention of money or property of another against the fundamental principles of justice or equity and good conscience." Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005)("it becomes necessary in any case where benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties").

*4 In brief, these Plaintiffs allege that UMass: "saved significant sums of money [during the campus shutdown] in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, etc." (Opposition at page 17, and Amended Complaint paras. 246, 277); "received a significant bailout from the Federal Government under the CARES Act" (id., and Amended Complaint paras. 250, 281); and is supported by a multi-million dollar endowment while its students incur debt to pay the very fees and tuition Defendant seeks to retain." Id, and Amended Complaint paras. 249, 280. Counsel opines "[t]his is a textbook example of an unjust and inequitable arrangement." Opposition, at page 17. UMass responds that it is "cash-strapped," and that "plaintiffs and their attorneys … seek to profit off the difficult time that the University finds itself in." Memorandum in Support, at page 2. Neither of these rhetoric-laden positions carries persuasive weight.

UMass contends that this equitable theory of recovery depends on its having committed some unjust or otherwise wrongful acts. Memorandum in Support, at pages 18-19. Here again, however, Massachusetts law is clear that a determination of unjust enrichment is "a quality that turns on the reasonable expectations of the parties." Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013). Plaintiffs allege that they reasonably expected to receive in-person instruction and access to on-campus facilities for the spring semester, and that UMass' decision not to make refunds – even were there no breach of contract because COVID created a frustration of purpose – was unreasonable.

It is of course true that a claim for unjust enrichment is not available when there is a legal remedy for breach of contract. CACH, LLC v. Yue Fang, 95 Mass. App. Ct. 1119 at n. 2 (2019)(Rule 1:28 decision), citing Santagate, 64 Mass. App. Ct. at 329 ("An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law."). However, there are potentially multiple agreements or understandings, with varying terms, at issue here (for tuition, and for different types of fees), and UMass at this stage is denying altogether either the existence of any particular contract, or the enforceability of any

such contract in the face of the pandemic. Plaintiffs are accordingly allowed to plead in the alternative, unless and until the question of the contract claims is resolved.

**Accordingly, the unjust enrichment claims (Count II with respect to tuition, and Count IV with respect to fees) survive.**

**Nothing in these Rulings addresses the standing of particular Plaintiffs with respect to particular claims, or the merits of the class allegations, all of which are reserved for another day.**

## Conclusion

**Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Paper 11) is <u>DENIED</u>.**

<u>**SO ORDERED**</u>**.**

Dated: March 8, 2021

<<signature>>

Christine M. Roach

## Footnotes

1  UMass finds significance in a clause contained in the first Complaint, but missing from the Amended version, to wit: "While closing campus and transitioning to online classes was the right thing for Defendant to do ...." Docket Paper 1, para. 2. The court finds more significance in the fact that 282 paragraphs of the Amended Complaint do not make "a short and plain statement of the claim." [Schaer v. Brandeis University, 432 Mass. 474, 477 (2000)](#); [Mass.R.Civ.P. 8(a)](#).

2  This omission is only partially corrected by Plaintiffs' "Supplemental" filing of March 1, 2021, which I have since reviewed, which merely brings to the court's attention what other trial judges in Massachusetts have had to say about this type of case. Paper 18.

3  I agree with the many courts who have considered this question, locally and farther afield, that the sorts of claims pleaded here are not claims for "educational malpractice."

4  [Chase Precast Corp. v. John J. Paonessa Co., Inc., 409 Mass. 371, 373-375 (1991)](#); [Mishara Constr. Co. v. Transit-Mixed Concrete Corp., 365 Mass. 122, 128-130 (1974)](#).

5  While I agree that the "fee" claims are more muddled, 1 am not prepared at this time to dismiss claims for fees that "support" programs, as distinct from fees that provide facility access. Nothing in the federal district court's two decisions in <u>Chong v. Northeastern University</u>. 2020-1,0844-RGS, provide me with a fair way to apply that analysis to these facts, without more on the topic. As discussed at hearing, the technology fee, for example, will likely require limited discovery, to the extent the parties persist in their disparate factual claims. Memorandum in Support, at page 16 ("As concerns the technology fee, moreover, the transition to remote learning increased the costs related to the University's IT infrastructure, including personnel costs for IT professionals and increased need for software and hardware to permit the transition to remote learning to take place as relatively seamlessly as sit did. University students got the full value of their technology fee this year.").