# EXHIBIT 10

2021 WL 1235493 (Ind.Super.) (Trial Order)
Superior Court of Indiana,
Court 2.
Tippecanoe County

Elijah SESLAR, Zachary Church, Jordan Klebenow et al,

v.

THE TRUSTEES OF PURDUE UNIVERSITY, Purdue University.

No. 79D02-2005-PL-000059.
March 8, 2021.

**Order on Defendants Motions to Dismiss**

Jacob Ross Cox, 1606 N Delaware St, Indianapolis IN 46202.

Emily Allison Kile-Maxwell, Faegre Drinker Biddle & Reath LLP, 300 N Meridian Street, Ste 2500, Indianapolis IN 46204.

Jane Ann Dall Wilson, Faegre Drinker Biddle & Reath LLP, 300 North Meridian Street Suite 2500, Indianapolis IN 46204.

Roy T Willey, 32 Ann Street, Charleston SC 29403.

Eric M Poulin, 32 Ann Street, Charleston SC 29403.

Vess Allen Miller, One Indiana Square, Suite 1400, Indianapolis IN 46204.

Richard Edward Shevitz, Cohen & Malad, One Indiana Square, Suite 1400, Indianapolis IN 46204.

Steven P Meyer, Judge.

**\*1** Plaintiff Elijah Seslar ("Seslar") filed a Class Action Complaint on behalf of himself and others against Defendant Trustees of Purdue University ("Purdue") on May 20, 2020 and an Amended Complaint on August 24, 2020. Plaintiffs Zachary Church, Jordan Kebenow and Luke McNally (collectively referred to as "Church Plaintiffs") filed their Class Action Complaint on behalf of themselves and others against Purdue on June 1, 2020. The parties agreed to consolidate their Complaints into this Cause of Action.

On December 1, 2020, this Court held a hearing on Purdue's Motions to Dismiss the Complaints. The Court, having considered the pleadings and authorities filed herein, argument of counsel presented at the hearing, and subsequent authorities filed by the parties, now issues its ruling below.

**I. Background**

Seslar and the Church Plaintiffs are students of Purdue University. They bring their actions, individually and on behalf of other students, seeking partial refunds of tuition and other fees paid as a result of Purdue converting on-campus classes to remote e-learning in the middle of the 2020 Spring Semester. Purdue's actions were pursuant to an Executive Order issued by the Governor of Indiana that halted in-person classroom operations because of the COVID-19 pandemic. Purdue claims the Complaints must be dismissed per Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. The Court examines each Complaint separately.

## II. Legal Standards

A motion to dismiss under Indiana Trial Rule 12(B)(6) tests the legal sufficiency of the claim, not the facts supporting it. *City of East Chi., Ind. v. East Chi. Second Century, Inc.*, 908 N.E.2d 611, 617 (Ind. 2009) (*emphasis added*). Resolution of this issue does not entail going beyond an examination of the complaint at issue. *Stepanovich v. Houchin*, 126 N.E.3d 45 (Ind. Ct. App. 2019). For purposes of a 12(B)(6) Motion, trial courts should consider as true all the allegations of the complaint, and should view the motion in a light most favorable to the non-moving party, resolving all inferences in his favor. *William S. Deckelbaum Co. v. Equitable Life Assurance Soc'y*, 419 N.E.2d 228 (Ind. App. 1981), modified 422 N.E.2d 301, 1981 Ind. App. LEXIS 1386 (Ind. Ct. App. 1981). Motions to dismiss are not favored by law, and they are properly granted only when the allegations present no possible set of facts upon which the complainant can recover. *Id.* Although the plaintiff need not set out in precise detail the facts upon which the claim is based, he must still plead the operative facts necessary to set forth an actionable claim. *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 890 (Ind. Ct. App. 2007). A court also need not accept as true conclusory, nonfactual assertions or legal conclusions. *Id.*

In Indiana, the relationship between a student and a university has been characterized as one of implied contract. *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013) citing *Neel v. Indiana University Board of Trustees*, 435 N.E.2d 607, 610 (Ind. Ct. App 1982). The terms of the contract, however, are rarely delineated, nor do the courts apply contract law rigidly. *Id.* The catalogues, bulletins, circulars, and regulations of a university made available to [a student] may become part of the contract. *Id.* quoting *Ross v. Creighton Univ.* 957 F.2d 410, 416 (7th Cir. 1992). A student must point to an identifiable contractual promise that a university failed to honor. *Ross*, 957 F.2d at 416.

**\*2** The above principles have been applied to cases where a student is challenging the academic or educational judgment of a university. For example, in *Neel* a dental student claimed Indiana University breached a contract he had with the Dental School when the School dismissed him for academic insufficiency. In *Amaya*, a medical student challenged the school's decision to dismiss him for failure to maintain acceptable professional standards by cheating on an examination. However, the Court finds that the implied contract theory is equally applicable in this instance where students are seeking monetary damages for services they say they paid for but were not completely provided by Purdue. See *Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 786, quoting *Ross*, 957 F.2d at 471 (The essence of a breach on contact claim "is not that the institution failed to perform adequately a promised educational service, but rather that it failed to perform the service *at all*")

An implied contract may be inferred from the conduct, situation, or material relations of the parties. See *Money Store Inv. Corp. v. Summers*, 909 N.E.2d 450, 459 (Ind. Ct. App. 2009).

## III. Seslar's Complaint

According to Seslar's Complaint, Purdue is an institution of higher learning located in Indiana, with its main campus in West Lafayette, Indiana. *Seslar Amended Compl.* ¶*5*. It also operates other campuses throughout the state including cities such as Fort Wayne, Westville, South Bend, Indianapolis, and Vincennes. *Id.* ¶*6*. Seslar enrolled at Purdue's Fort Wayne Campus. *Id.* ¶ *15*. Purdue "offers both in-person, hands-on programs, and fully online distance-learning programs, which it prices as separate distinct products." *Id.* ¶*23*. Purdue markets the in-person and online programs separately throughout its website and other publications, circulars, and academic catalogs. Id. ¶¶ *67-70*. When students enroll in the on-campus program, Purdue promised to provide benefits above basic academic instruction including but not limited to: "face-to-face interaction with professors, mentors, peers"; "access to facilities such as computer labs, study rooms, laboratories, and libraries;" "student unions"; "extra-curricular activities;" and "hands-on learning." *Id.* ¶ *24*.

Purdue's publications regarding in-person classes are "full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratio, campus diversity; campus location; and the like." *Id.* ¶ *71*. Purdue markets the "on-campus experience as a major benefit to enrollment." *Id.* ¶ *72*. One of Purdue's websites states, "finding a home on campus is an important part of college life … you'll find your footing, make campus your own and establish lifelong friendships." *Id.* Another website states Purdue Fort Wayne offers a traditional campus experience for students with "well-equipped classrooms, impressive research labs, first-rate student housing, and inviting gathering spaces." *Id.*

When students accept an offer to attend Purdue, they are "flooded" with communications from the school extolling the virtues of the on-campus experience. *Id.* ¶ *77*. They receive academic catalogs and course listings on a website that specifically delineates on-line classes from in-person programs. *Id.* ¶ *82*. In-person classes are listed not only by description, but also by meeting time and physical classroom location. *Id.* ¶ *83*.

Seslar and others did not seek an on-line degree, but instead chose the on-campus program offerings and enrolled on that basis. *Id.* ¶*24*. He paid tuition for the Spring 2020 semester. *Id.* ¶ *20*. In addition to tuition, enrolled students are required to pay certain mandatory fees. These fees included but are not limited to: a Technology Fee that "supports the usage and maintenance of equipment in the student computer labs and classrooms"; a Student and Wellness Fee to cover "operational expenses of the recreational sports fitness facility"; and a Student Activity fee that "provides funding for student events and initiatives". *Id.* ¶¶ *29-34*.

**\*3** From January 13, 2020 through March 15, 2020, Seslar and other students attended physical classroom instruction provided by Purdue and had access to the full campus. *Id.* ¶¶ *87, 89*. But as a result of the COVID-19 pandemic, Purdue announced that across all campuses, the University was moving all classes online for the remainder of the semester, beginning March 23, 2020. *Id. 1! 40*. Purdue urged students who had already left campus for Spring Break not to return; and students who were still on campus to go back to their permanent homes. Most non-essential campus, student and recreational facilities were closed but some restricted access to campus continued. *Id. Hf 41, 44*. Purdue has not offered any pro-rated discounts or refunds of tuition or mandatory fees. *Id.* ¶¶*44-45*. Purdue also announced it would conduct the 2020 summer courses remotely and certain mandatory fees would be waived. *Id.* ¶ *46*.

Seslar's Complaint includes two putative class actions: the "Tuition Class" (consisting of all people who paid tuition and enrolled in classes for the Spring 2020 semester who were denied live in-person instruction) and the "Fee Class" (consisting of all people who paid fees of students enrolled in classes for the Spring 2020 semester). *Id.* ¶*48*. The Complaint includes four claims: (1) Breach of Contract for the Tuition Class; (2) Unjust Enrichment for the Tuition Class; (3) Breach of Contract for the Fees Class; and (4) Unjust Enrichment for the Fees Class.

**A. _Breach of Contract_**. The elements of a breach of contract claim are (1) the existence of a contract (2) the defendant's breach, and (3) damages to the plaintiff. *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993).

Here, Seslar alleges that he and other students of the Tuition Class entered into contracts, which required Purdue to provide live in-person classroom instruction in exchange for tuition paid by the students. *Compl.* ¶*62*. The terms of the contract are implied through various sources, including websites and marketing materials. *Compl.* ¶*63*. Those materials touted the benefits of on campus living including well-equipped classrooms, impressive research labs, student housing, and inviting gathering spaces. Purdue also provides two separate programs and pricing structures for in-person and online instruction. *Compl.* ¶¶ *81-82*. Academic catalogs delineate in-person classes and list meeting times and physical classroom locations. *Compl. H83*. Seslar also relies upon the conduct of the parties wherein Purdue provided in-person learning for the first half of the 2020 Spring Semester. *Id.* ¶ *87*. Members of the Tuition Class accepted the offer for in-person education by paying tuition and attending classes during the Spring 2020 semester. *Id.* ¶*90*. Purdue breached the contract by moving all the classes to online distance learning and eliminating the on-campus experience without reducing funds or refunding tuition. *Id.* ¶*94*. The Complaint seeks damages amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access, which they received. *Id.* ¶ *101*.

Regarding the Fee Class, Seslar alleged mandatory fees that were assessed against every enrolled student. Those fees covered the cost of maintenance of equipment in student computer labs and classrooms, operational expenses of the recreational sports fitness facility, and funded student events and initiatives. *Id.* ¶¶*123-126*. He claims he and others paid these mandatory fees and in accepting the payments, a contract was formed which required Purdue to make these services, programs, or benefits available. *Id.* ¶*128*. He claims Purdue breached this contract when it moved to online learning, constructively evicting the students from campus, closing most campus buildings and facilities and cancelling most student activities. *Id.* ¶ *131*. He further claims the Fee Class has been deprived of the value of the services, programs, and benefits and is entitled to damages to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided. *Id.* ¶*135*.

 **\*4**  Viewing the allegations in the complaint as most favorable for Seslar at this stage of the case, and considering them within the context of an implied contract between the students and Purdue, the Court finds Seslar has plead enough operative facts necessary to set forth an actionable claim for the Tuition Class and Fees Class to survive a Rule 12(b)(6) motion to dismiss. Whether these allegations can withstand scrutiny in subsequent proceedings regarding the existence or enforceability of an implied contract for in-person learning is an issue left for another day.

Purdue argues that the Governor's Executive Order made providing in-person instruction impossible. *Def. Memorandum in Support of Motion to Dismiss, pp. 18, 20.* Impossibility is an affirmative defense to performance of an executory contract and is generally invoked as a defense to an action for damages. *Wagler v. W. Boggs Sewer Dist.*, 980 N.E.2d 363, 378 (Ind. Ct. App. 2012) (omitting internal citations). Impossibility has been defined as "where the performance of a contract becomes impossible, non-performance is excused, and no damages can be recovered." *Id.* To invoke impossibility, one must demonstrate that performance is "not merely difficult or relatively impossible, but absolutely impossible, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract." *Id.*

Impossibility is not one of the enumerated defenses that may be made by a T.R. (12)(B) motion. It may be more appropriately asserted in a responsive pleading or by means of a motion for summary judgment. See *Mattingly v. Whelden*, 435 N.E.2d 61, 64 (Ind. Ct. App. 1982).

Purdue also directs this Court to cases from other jurisdictions where courts dismissed similar claims because the contract between the students and their universities did not provide for in-person instruction. However, many of those cases addressed Summary Judgment motions. The standard for Summary Judgment is whether the evidentiary matters demonstrated no genuine issue as to any material fact such that the moving party was entitled to a judgment as a matter of law. *Ind. T.R. 56.* Those courts also considered documents submitted outside the pleadings, such as tuition invoices statements and student handbooks. The rulings were not based upon a T.R. 12(B)(6) standard as is required here.

**B.** *Unjust Enrichment*. There are three general types of contracts-express, implied and constructive. *Ahuja v. Lynco Ltd. Med. Research*, 675 N.E.2d 704, 709 (Ind. Ct. App. 1996), *trans. denied.* Express and implied contracts are very similar. *Id.* They differ only in that an express contract is evidenced by spoken or written words while an implied contract is evidenced by the conduct of the parties. *Id.* The final type of contract, a constructive contract, is also known as a quasi-contract or a contract implied at law. *City of Indianapolis v. Twin Lakes*, 568 N.E.2d 1073, 1078 (Ind. Ct. App. 1991), *reh'g denied, trans. denied.* It is a legal fiction used to refer to a situation where no contract exists "but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise." *Id.* The issues of unjust enrichment and conferring a benefit arise in the context of a constructive contract. *Ahuja*, 675 N.E.2d at 709. Unjust enrichment operates when there is no governing contract. *DiMizio v. Romo*, 756 N.E.2d 1018, 1024-25 (Ind. Ct. App. 2001)

Here, Seslar claims Unjust Enrichment as an alternate theory of recovery for the Tuition and Fee Classes. *Amend. Compl.* ¶¶ *105, 138*. He claims he and other members paid substantial tuition for "live in-person instruction in physical classrooms on a physical campus with all attendant benefits." *Id.* ¶ *106*. By doing so, they conferred a benefit on Purdue. *Id.* ¶ *107*. However, they did not receive the full benefit of their bargain. *Id.* ¶ *109*. Purdue has saved significant sums of money by moving classes

online. *Id.* ¶ *112*. Thus, Seslar claims that equity and good conscience require Purdue to return a portion of the monies paid in tuition. *Id.* ¶ *106*. Similarly, Seslar's claims he and others paid "substantial student fees for on-campus benefits, access and services and did not receive the full benefit of the bargain." *Id.* ¶ *140*. Purdue retained these fees and has "failed to provide the services, benefits and/or programs." *Id.* ¶ *143*. Thus, equity and good conscience require Purdue return a "pro rata portion of the monies paid in fees". *Id.* ¶ *146*.

**\*5** As stated above, unjust enrichment operates only where there is no governing contract. A Plaintiff cannot recover under both theories of breach of contract and unjust enrichment. However, Indiana Trial Rules provide that a pleading may state as many separate claims or defenses as the pleader has regardless of the consistency and whether based on legal or equitable grounds, *Ind. T.R. 8(E)(2)*). The Court declines to dismiss the unjust enrichment claims at this stage of the proceedings, as they have been adequately pled as an alternative theory of recovery.

### IV. Church Plaintiffs' Complaint

According to the Complaint, the Church Plaintiffs were enrolled at Purdue's campus located in West Lafayette, IN. Unlike Seslar above, these students lived in on-campus housing. *Church Compl.* ¶¶ *10-15, 17-21, 23-27*. They were charged tuition for live in-person instruction in brick and mortar classrooms. *Id.* ¶*49*. They paid tuition and contracted for in-person instruction. *Id.* ¶*51*. In March, 2020, Purdue announced that all Spring 2020 classes would be moved to online learning platforms. *Id.* ¶*38*. The value (and cost) of online classes is less than in-classroom instruction, with labs, seminars and office hours. *Id.* ¶*48*. By way of example, costs for a Bachelor of Science Degree in Accounting or Business Administration for out-of-state residents through Purdue's online facility (Purdue Global) is approximately $66,780.00, compared to the same degree for in-person instruction (excluding housing, meals, and ancillary expenses) which is approximately $115,000.00. *Id.* ¶¶ *50-51*.

Students also pay fees in order to use campus facilities, including but not limited to "school-specific costs, parking fees, gym/health club membership fees, and any other fees charged by Purdue with respect to obtaining an in-person education." *Id.* ¶*28*. The Plaintiffs paid these fees. *Id.* ¶¶ 11, 15, 21, 27. Moreover, the following programs include additional fees: computer science ($2,050.00); data science ($2,050.00); engineering ($2,050.00); management ($1,436.00), Purdue Polytechnic ($572.00), and honors college ($200.00). *Id. 51.*

At the beginning of the semester Church Plaintiffs agreed to a contract that governs the terms of their on-campus housing. *Id.* ¶*11, Church Compl. Ex. "A"*. In addition to tuition, fees, and housing costs, students were charged for on-campus meals and credits to their "Dining Dollar" accounts. *Id.* ¶¶ *20, 26, 58*. Pursuant to Purdue's March, 2020 announcement, students who could leave campus residence halls were directed to do so and only students with extenuating circumstances were permitted to remain in on-campus housing. *Id.* ¶ 38. Further, most campus buildings would soon remain locked and all subsequent student activities would be canceled. *Id.* Food options on campus would be continued on a limited basis. *Id.* 38. Students were informed that they would receive a $750 credit to their student accounts as long as they moved out of residence halls by a set date. *Id.* ¶ *53*.

This Complaint is divided into four categories: (1) the Tuition Class; (2) the Housing Class; (3) the Fee Class; and (4) the Meals Class. *Id.* ¶ *62*. The Tuition Class claims Purdue breached its contract to provide live in-person instruction by moving classes to online distance learning and refusing to reduce outstanding charges or refund tuition costs paid. *Id.* ¶*75*.

The Housing Class claims it entered into contracts that provided students would pay fees for residence hall housing and, in exchange, Purdue would provide housing. *Id.* ¶ *81*. Plaintiffs paid the amounts due, but Purdue did not provide housing for the entire semester. *Id.* ¶ *82*. They have been damaged in that they have been deprived of the value they paid for residence housing and meals. *Id.* ¶ *85*.

**\*6** The Fees Class claims students entered into contracts with Purdue (the contracts are in the University's possession), which provided they would pay various fees, and, in exchange, Purdue would provide services to the students. *Id.* ¶ *88*. Purdue has refused to reduce outstanding charges and has retained the monies paid by the students, without providing them the benefit

of their bargain. *Id. ¶ 89.* The students have been damaged by being deprived of the value of the services the fees they paid were intended to cover. *Id. ¶ 90.*

The Meals Class claims students entered into contracts that they would pay fees for access to on-campus dining service and Purdue would provide food service to those students. *Id. ¶ 109.* Purdue breached this contract when it moved classes online, closed most University buildings, and stopped providing the food service for which these fees were intended to pay. *Id. ¶ 110.* The students have been damaged by being deprived of the value of the services the fees they paid for meals were intended to cover, while Purdue retained these fees. *Id. ¶ 112.*

The Church Plaintiffs seek a reduction in outstanding charges and a partial refund of: (a) tuition representing the difference in the value of a half-semester of live in-person instruction versus the value of half semester of online distance learning; (b) the unused portion of housing costs proportionate to the amount of time that remained in the Spring 2020 semester; (c) the unused portion of each meal contract and Dining Dollars account, and (d) prorated share of fees. *Id. ¶ 41*

They have also brought Four (4) Counts of Unjust Enrichment relating to the Tuition, Fees, Housing, and Meals Classes. These Counts claim that Purdue has retained fees paid by the students without providing the services for which the fees were paid and, as such, has been enriched. *Id. ¶¶ 95, 99, 105, 117*

A. <u>Breach of Contract</u>. The Court incorporates the legal authorities cited above, which includes that Indiana law provides that the relationship between a student and a university is one of implied contract. The terms of the contract, however, are rarely delineated. For their Tuition Claim, the Church Plaintiffs assert that they paid tuition for the 2020 Spring Semester and contracted for attendance at Purdue for "in-person instruction." They do not cite any express representations made by Purdue for this proposition. Unlike the Seslar Complaint above, they do not cite to any representations made in Purdue's marketing materials that implied in-person instruction. They also do not rely on past conduct of the parties as did Seslar – who stated Purdue actually provided in-person instruction for the first part of the semester. However, like Seslar, the Church Plaintiffs assert that they paid a significantly higher price for in-person instruction on campus compared to Purdue's published costs for online distance learning through Purdue Global. Whether this is sufficient to establish an implied contract for in-person learning remains to be seen after further development of the evidence. But the Court is satisfied that the allegations are enough to place Purdue on notice of the claim of breach of contract. Again, a Trial Rule 12 (B)(6) claim tests the legal sufficiency of the claim, not the facts supporting it.

Regarding the Housing and Meal Claim, the Church Plaintiffs refer to an express on-campus housing contract, rather than an implied contract. The contract and stated terms can be found in their Exhibit "A" attached to the Complaint. It stated that Purdue agreed to provide housing and a meal plan to the student for the 2019-2020 Academic Year, with the exception of certain vacations, such as Thanksgiving and Spring Break or "in the event of an emergency as declared by the University." It allows Purdue to reassign a Student's housing "in the event of a national or regional emergency." It provided that participation in a meal plan is a condition of the housing agreement, except for students assigned to certain residence halls, and stated the student could choose from various meal plans. The agreement allows Purdue to cancel the agreement if the student violated any rule of the contract or other regulations of the University. Whether Purdue had a right to breach or cancel this contract under the circumstances of the Governor's Executive Order remains to be seen, as is the issue of damages, if any, if such a cancellation or breach was justified. Regardless, the Court is satisfied that the Church Plaintiffs have adequately stated a claim upon which relief can be granted and have placed Purdue on sufficient notice of this claim.

**\*7** The Fees Claim refers to items such as parking, gym/health club membership, and any "other fees charged by Purdue with respect to obtaining an in-person education." *Id. f 28.* With all inferences leading in favor of the non-moving party, the Court infers this claim is based upon an implied contract for Purdue to provide certain services related to on-campus living. Thus, this claim is sufficient to withstand the Motion to Dismiss. Further evidence is needed to shed light on the specific campus related fees and how plaintiffs were deprived of such services. But the claim also refers to fees for specific programs such as: computer science; data science; engineering; management; Purdue Polytechnic; and honors college. The Church Plaintiffs fail to state

how switching classes to online remote learning deprived them of services related to these program-specific fees. Therefore, this part of the Fees Claim must be dismissed.

B. <u>Unjust Enrichment</u>. Like Seslar above, the Church Plaintiffs claim Purdue has been unjustly enriched by keeping payments made for tuition and fees without providing the services for which the fees were paid. As stated above, Indiana Trial Rule 8(E)(2) allows plaintiffs to plead in the alternative. Therefore, a Motion to Dismiss these claims is not proper at this stage of the proceedings. However, it appears to the Court that the Housing and Meals Claim is governed by an express contract. Since unjust enrichment is not available where there is an express contract, this part of the Church Unjust Enrichment Claim must be dismissed.

## IV. SUMMARY

Defendant Purdue University's Motion to Dismiss Seslar's Class Action Complaint for Claims for Breach of Contract and Unjust Enrichment regarding the Tuition Class and Fees Class is DENIED.

Defendant Purdue University's Motion to Dismiss The Church Plaintiffs' Class Action Complaint, Counts I, Breach of Contract for the Tuition Class is DENIED. The Motion to Dismiss Count III, Breach of Contract for the Fees Class is GRANTED in part since the Court finds the portion this claim relating to program-specific fees (computer science; data science; engineering; management; Purdue Polytechnic; and honors college) fails to state a claim upon which relief may be granted. The Motion to Dismiss Counts II and VII, Breach of Contract for the Housing and Meals Class is DENIED. The Motion to Dismiss Counts IV and VI, Unjust Enrichment claims for the Tuition and Fees Class is DENIED. The Motion to Dismiss Counts V and VIII, the Unjust Enrichment Claim for the Housing and Meals Class is GRANTED, finding that these claims are subject to an express contract, which prevents recovery under the theory of unjust enrichment.

So ordered on this the 8th day of March, 2021 aew

<<signature>>

Steven P Meyer, Judge

Tippecanoe Superior Court 2

Distribution: Jacob Ross Cox

1606 N Delaware ST

Indianapolis IN 46202

Emily Allison Kile-Maxwell

Faegre Drinker Biddle & Reath LLP

300 N Meridian Street

Ste 2500

Indianapolis IN 46204

Jane Ann Dall Wilson

Faegre Drinker Biddle & Reath LLP

300 North Meridian Street Suite 2500

Indianapolis IN 46204

Roy T Willey

32 Ann Street

Charleston SC 29403

Eric M Poulin

32 Ann Street

Charleston SC 29403

Vess Allen Miller

One Indiana Square

Suite 1400

Indianapolis IN 46204

Richard Edward Shevitz

COHEN & MALAD

One Indiana Square

Suite 1400

Indianapolis IN 46204

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.