# EXHIBIT 18

2021 WL 2894720
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

Daniella MONTESANO, individually and on behalf of others similarly situated, Plaintiffs,
v.
The CATHOLIC UNIVERSITY OF AMERICA, Defendant.
Isaiah Payne, individually and on behalf of all others similarly situated, Plaintiffs,
v.
Howard University, Defendant.

No. 20-cv-1496 (DLF), No. 20-cv-3792 (DLF)
|
Signed 07/09/2021

**Attorneys and Law Firms**

Eric Poulin, Pro Hac Vice, Roy T. Willey, IV, Pro Hac Vice, Anastopoulo Law Firm, LLC, Charleston, SC, Frederick Arnold Douglas, Tram T. Pham, Curtis Aaron Boykin, Douglas & Boykin PLLC, Washington, DC, for Plaintiffs.

Bruce M. Berman, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, Alan E. Schoenfeld, Wilmer Cutler Pickering Hale & Dorr, LLP, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

DABNEY L. FRIEDRICH, United States District Judge

*1 Before the Court are two motions to dismiss in these two related cases: Catholic University's Motion to Dismiss, Dkt. 20 (No. 20-cv-1496) and Howard University's Motion to Dismiss, Dkt. 36 (No. 20-cv-3792). For the reasons that follow, the Court will deny Catholic University's motion, and deny in part and grant in part Howard University's motion.

### I. BACKGROUND

The plaintiffs bring purported class actions against Catholic University and Howard University, respectively, following the universities' cancellation of all in-person education due to the COVID-19 pandemic. The plaintiffs allege that the universities moved classes to an online format, closed campus buildings, and ordered students to leave campus without providing reimbursement for in-person tuition and campus-related fees. See Catholic Pl.' First Am. Compl. ¶¶ 1–3, Dkt. 17 (No. 20-cv-1496) (hereinafter "Catholic FAC"); Howard Pl.' First Am. Compl. ¶ 1, Dkt. 19 (No. 20-cv-3792) (hereinafter "Howard FAC"). The plaintiffs bring claims for breach of contract, Catholic FAC ¶¶ 63–139, 155–70; Howard FAC ¶¶ 59–71, and, in the alternative, unjust enrichment, Catholic FAC ¶¶ 140–54, 171–80; Howard FAC ¶¶ 72–77. The Howard University plaintiffs bring one additional claim of conversion. Howard FAC ¶¶ 78–85. The defendants now move to dismiss the complaints under Rule 12(b)(6). See generally Catholic Univ.'s Mem. in Supp. of Mot. to Dismiss, Dkt. 20-1 (No. 20-cv-1496) (hereinafter "Catholic's MTD"); Howard Univ.'s Mem. in Supp. of Mot. to Dismiss, Dkt. 36-1 (No. 20-cv-3792) (hereinafter "Howard's MTD").

### II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; see also *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks omitted). Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, 129 S.Ct. 1937, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*,

677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).

*2 When deciding a Rule 12(b)(6) motion, the Court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III. ANALYSIS

#### A. Breach of Contract

"To prevail on a claim of breach of contract [in the District of Columbia], a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). "[T]he relationship between a university and its students is contractual in nature ... and the terms set down in a university's bulletin become a part of that contract." *Basch v. George Washington Univ.*, 370 A.2d 1364, 1366 (D.C. 1977). And "[u]nder D.C. law, the contract between a university and its students can include disciplinary codes and other communications from a university to its students." *Doe v. George Washington Univ.*, 321 F. Supp. 3d 118, 123 (D.D.C. 2018).

At this early stage of the proceedings, the plaintiffs have alleged sufficient communications between the universities and prospective students to establish an enforceable contract, or at the very least an implied contract, that includes access to the campuses and in-person education. The Howard plaintiffs allege that, "Plaintiff and Defendant entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services." Howard FAC ¶ 3. "The Course Catalog for the Spring 2020 Semester at Howard University contains numerous promises and representations relating to in-person instruction and activities." *Id.* ¶ 25. For example, the plaintiffs point to sixteen different course listings in which the university described in-person experiences, including internships, field work, laboratory study, studio instruction, and hands-on experiences. *Id.* ¶¶ 26–41. Likewise, the Catholic plaintiffs allege that the university, "has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs." Catholic FAC ¶ 21. For example, the university's "Course Catalog shows a separate section for Online Programs." *Id.* ¶ 118. They also describe numerous communications from the university to its prospective and admitted students regarding the vibrant campus life and opportunities in Washington, D.C. *Id.* ¶¶ 71–108. The plaintiffs have thus plausibly alleged that the universities contracted, through their communications to prospective students, to provide access to campus and in-person education in exchange for in-person tuition and fees.

The defendants are correct that D.C. law counsels against courts second-guessing academic judgments made by universities. See *Allworth v. Howard Univ.*, 890 A.2d 194, 202 (D.C. 2006) ("[A] court must be careful not to substitute its judgment improperly for the academic judgment of the school.") (internal quotation marks omitted). But here, the plaintiffs' claims are based on the nature of the actual services provided, rather than the universities' academic judgments. The Catholic plaintiffs allege that the university's decision "closing most campus buildings, and requiring all students who could leave campus to do so," Catholic FAC ¶ 1, prohibited students "from recognizing the benefits of on-campus enrollment, meals, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition." *Id.* ¶ 2. Similarly, the Howard plaintiffs allege that Howard's shift to online instruction deprived the students of "in-person educational services facilities, access, and/or opportunities." Howard FAC ¶ 11.

*3 "Numerous courts" across the country have reached the same conclusions in similar tuition-refund cases related to the COVID-19 pandemic. *Crawford v. Presidents & Directors of Georgetown Coll.*, No. 20-cv-1141, 2021 WL 1840410, at *8 (D.D.C. May 7, 2021) (collecting cases), *appeal filed* No. 21-7063 (D.C. Cir. June 7, 2021). But other courts, including two courts in this district, have granted motions to dismiss on similar claims. See *id.*; *Shaffer v. George Washington Univ.*, No. 20-cv-1145, 2021 WL 1124607 (D.D.C. Mar. 24, 2021), *appeal filed* No. 21-7040 (D.C. Cir. Apr. 23, 2021). In *Shaffer*, the Court reasoned that "no plausible reading of the university materials gives rise to an enforceable contractual promise for in-person instruction," *id.* at *2, given that "general descriptions and distinctions do not

create enforceable obligations," *id.* In *Crawford*, the Court found that "[i]t is plausible that both **universities** impliedly promised, at most, to make a good-faith effort to provide on-campus education, while retaining the right to deviate from the traditional model if they reasonably deemed it necessary to do so." 2021 WL 1840410, at *7. The *Crawford* Court relied heavily on the **universities**' reservation of rights to make changes to the contract, holding that although the "provisions fall somewhat short of expressly granting the **universities** an unambiguous, absolute right to cancel in-person instruction ... they put students on notice that their expectations regarding the format of instruction— even *reasonable* expectations—might go unfulfilled." *Id.* (emphasis in original).

The **universities** in this case argue that they too either reserved their rights to make changes as need or disclaimed reliance on any alleged promises in the course catalogs. *See* **Catholic** Def.'s Ex. A at 3, Dkt. 20-2 ("The **university** reserves the right to establish and revise requirements for graduation and degrees, curricula, schedules, charges for tuition and other fees, and all regulations affecting students, whether incoming or previously enrolled."); Howard's MTD at 12 (quoting the Course Catalog to say: "Curriculum guides published in this bulletin are for information only.").

But, like the *Crawford* court, this Court questions whether the **universities**' reservation of rights enumerating certain categories of potential changes, plus a catch-all category, permits the **universities** to make *any and all* changes imaginable to course programming and educational services. 2021 WL 1840410, at *7–8. It likely would be unreasonable, for example, to interpret the reservation clauses so broadly as to permit the **universities** to decide in the middle of a semester to remove all professors and impose a model of self-directed learning. The reservations of rights clearly permit the **universities** to make some changes to course programming and educational services. Yet certain assumptions of the broader implied contract between the **universities** and their students are so fundamental that the reservations of rights cannot reasonably be interpreted to waive them. *See M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015) ("[D]octrine instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract.");

*Davis v. Joseph J. Magnolia, Inc.*, 640 F. Supp. 2d 38, 45 (D.D.C. 2009) ("A contract lacks consideration when one party's promise is illusory, and a promise is illusory when performance of that promise is optional."). The *Crawford* Court recognized this tension and explained that "an implied duty of good faith and fair dealing," which inheres in all contracts, "means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 2021 WL 1840410, at *8 (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)) ("If the **universities** had cancelled all in-person instruction simply to save money and effort, that might be precisely the type of unreasonable, bad-faith action that D.C. contract law prohibits.").

District of Columbia courts have found an implied duty of good faith and fair dealing in contracts, and parties can be liable for breaching that duty. *See, e.g., Paul*, 754 A.2d at 310 ("If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing."); *see also Hais v. Smith*, 547 A.2d 986, 987–88 (D.C. 1988) ("This duty prevents a party from evading the spirit of the contract, willfully rendering imperfect performance or interfering with the other party's performance."). This implied duty of good faith and fair dealing appears to be an independent duty, not a lens through which other contractual provisions are interpreted. *See Allworth*, 890 A.2d at 201–03 (discussing "bad faith or unfair dealing" as an independent claim, *id.* at 202).

**\*4** However, in *Eisenberg v. Eisenberg*, 357 A.2d 396 (D.C. 1976), the D.C. Court of Appeals suggested that this implied duty might instead limit the scope of a promise, stating that "in construing a[ ] provision ..., a court will impose on the person whose approval is necessary a duty to act reasonably and in good faith," as "[w]ithout such an obligation the contract would be illusory, since the approving party could unilaterally determine the extent of his duties and liability under the agreement by arbitrarily refusing to give his approval." *Id.* at 400. But this stray remark does not appear to be essential to the *Eisenberg* holding, and to the Court's knowledge, it has not formed the basis of another ruling by the Court of Appeals. Because the parties have not cited, and the Court is not aware of, a D.C. case in which an implied covenant of good faith and fair dealing has limited the scope of a contractual promise

—rather than simply created liability for breach—the Court declines to adopt that approach here.

Further factual development of the record is likely to shed light on the nature and scope of the implied contracts, including the scope of the universities' reservations of rights. At least as alleged in the complaints, however, the plaintiffs have plausibly stated a claim for breach of an implied contract.

### B. Unjust Enrichment

"Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *[News World Commc'ns, Inc. v. Thompsen](#)*, 878 A.2d 1218, 1222 (D.C. 2005); *see also [ABA, Inc. v. District of Columbia](#)*, 40 F. Supp. 3d 153, 172 (D.D.C. 2014). Here, the plaintiffs have plausibly alleged each of the elements of unjust enrichment: (1) the plaintiffs conferred a benefit on the universities when they paid tuition and fees for the Spring 2020 Semester, *see* Howard FAC ¶ 74; Catholic FAC ¶¶ 143–44; (2) the universities retained the benefit, *see* Howard FAC ¶ 75; Catholic FAC ¶ 145; and (3) for a variety of reasons, this retention was unjust. *See* Howard FAC ¶¶ 76–77; Catholic FAC ¶¶ 147–54.

Unjust enrichment claims can arise either where there is no alleged contract or where there is a contract that is ultimately unenforceable. *See [Vila v. Inter-Am. Inv., Corp.](#)*, 570 F.3d 274, 279–80 (D.C. Cir. 2009); *see also [Falconi-Sachs v. LPF Senate Square, LLC](#)*, 142 A.3d 550, 556 (D.C. 2016) ("[T]he statement that there can be no unjust enrichment in contract cases is plainly erroneous."). Further, "[a] party may state as many separate claims or defenses as it has regardless of consistency." [Fed. R. Civ. P. 8(d)(3)](#).

At this early stage, it is not yet clear whether the plaintiffs will ultimately prevail on a breach of contract theory. Indeed, it is yet undetermined whether a valid contract will even govern the precise issue of in-person versus remote education. And even if a valid contract does govern, it is premature to determine whether it is enforceable. Whether it was unjust for the universities to retain the plaintiffs' tuition and fees payments goes to the underlying merits of the case to be developed in further proceedings.

### C. Conversion

Finally, as the Howard plaintiffs conceded during a hearing on the motions, *see* Hrg. Tr. at \_\_\_\_\_ [1], their conversion claim must be dismissed because they fail to allege that they were entitled to "a specific identifiable fund of money," *[Edwards v. Ocwen Loan Servicing, LLC](#)*, 24 F. Supp. 3d 21, 30 (D.D.C. 2014).

For the reasons stated,

It is **ORDERED** that Catholic University's motion to dismiss, Dkt. 20 (No. 20-cv-1496), is **DENIED**. It is further

**ORDERED** that Howard University's motion to dismiss, Dkt. 36 (No. 20-cv-3792), is **DENIED IN PART** as to counts I and II of the complaint and **GRANTED IN PART** as to count III of the complaint.

**All Citations**

--- F.Supp.3d ----, 2021 WL 2894720

---

### Footnotes

1. The Court will publish an updated opinion with the final hearing transcript citation once the official transcript has been produced.