# EXHIBIT 22

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KRYSTIAN WNOROWSKI,<br>Individually and on behalf of others similarly situated,<br>  *Plaintiff*,<br><br>v.<br><br>UNIVERSITY OF NEW HAVEN,<br>  *Defendant*. | No. 3:20-cv-01589 (MPS) |

## RULING ON MOTION TO DISMISS

  Plaintiff Krystian Wnorowski brings this class action against the University of New Haven ("UNH") for a partial refund of tuition and fees based on claims of breach of contract and, alternatively, unjust enrichment. He asserts that UNH's contract with its students required it to provide an in-person, on-campus experience during the Spring 2020 semester, and that UNH failed to do so when it closed the campus in mid-March 2020 due to Covid-19. UNH moves to dismiss Wnorowski's suit for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (ECF No. 18). For the reasons discussed below, UNH's motion is DENIED.

**I.  BACKGROUND**

  The following facts are derived from the Plaintiff's amended complaint (ECF No. 9) and are assumed to be true for the purposes of this motion.

  UNH is an institution of higher learning in West Haven, Connecticut. (*Id.* at 2 ¶ 5). Wnorowski, a resident and citizen of Connecticut, is a full-time student at UNH. (*Id.* at 2 ¶¶ 9-10). He enrolled as a full-time student for the Spring 2020 semester after paying tuition and fees.

(*Id*. at 3 ¶¶ 16-17, 28). He sues on behalf of two classes that allegedly include several thousand other students, 42.3% of whom are Connecticut citizens.[1] (*Id*. at 3 ¶¶ 12-13).

UNH advertises its programs to prospective new students via its website and brochures. (*Id*. at 13 ¶ 63). These materials tout the benefits of its campus and in-person facilities, such as residence halls, "an engaged, vibrant campus community," and dining facilities. (*Id*. at 13-23 ¶¶ 67-72). Some students choose to apply to UNH for admission based in part on these materials. (*Id*. at 23 ¶ 74). When it accepts a student for admission, UNH sends her an offer letter that invites her to browse the school's website and visit the campus, along with additional materials describing the school and campus. (*Id*. at 23 ¶¶ 75-76). Based in part on these materials, a student might choose to accept UNH's offer of admission and make an enrollment deposit. (*Id*. at 24 ¶ 77).

Separately, the school promotes a distinct, fully online program "claiming you can 'study when and where you choose.'" (*Id*. at 13 ¶¶ 65-66). Ahead of each semester, a student chooses which courses to take and whether to take those in the fully online program or the on-campus program. (*Id*. at 25 ¶ 82). UNH uses a separate website for its online-only program, and tuition for the online-only program is determined separately from that for the on-campus program. (*Id*. at 25 ¶¶ 83-85).

Within her program, a student selects courses based on a list that provides the course description, "meeting time, professor, and physical classroom location" of the class, or "ONLINE" if the class is virtual. (*Id*. at 25-26 ¶¶ 86, 95). Students in many of UNH's on-

---

[1] The two classes of UNH students on whose behalf Wnorowski sues are dubbed the "tuition" and "fee" classes. The tuition class consists of those who paid tuition on behalf of students enrolled at UNH in Spring 2020 who were denied in-person instruction for the latter portion of the semester; the fee class consists of those who paid fees on behalf of students enrolled at UNH in Spring 2020. Wnorowski asserts that there is diversity jurisdiction under the "minimal diversity" requirement of the Class Action Fairness Act 28 U.S.C. § 1332(d) and that the amount in controversy is greater than five million dollars. (ECF No. 9 at 2-3 ¶¶ 11-13).

2

campus courses and programs are subject to "strict personal attendance requirements." (*Id.* at 25 ¶ 87.) In addition, UNH charges students fees that support labs and access to on-campus parking lots, health and counseling services, and the recreation center. (*Id*. at 5-6 ¶¶ 29-32).

In advance of the Spring 2020 semester, students registered for classes knowing "the description…meeting time, professor, and physical classroom location" of each in-person class. (*Id*. at 25 ¶ 86). Expecting that classes would be held in-person, "students attended classrooms to receive in-person instruction," which UNH provided. (*Id*. at 25-26 ¶¶ 88-89). On March 9, 2020, six and a half weeks into the semester, UNH announced it would be transitioning to remote instruction "as a result of the COVID-19 pandemic." (*Id*. at 6 ¶ 37). Soon thereafter, the State of Connecticut issued workplace restrictions for non-essential workers, and on March 16 UNH extended its remote instruction to the end of the semester. (ECF Nos. 18-5 at 2-6; 18-6 at 2-5[2]; and 18-7 at 2-4[3]). All students were forced to leave campus and continue their education online. (ECF No. 9 at 7 ¶¶ 38-41). The University has not refunded any of the Spring semester tuition or fees. (*Id*. at 7 ¶¶ 41-44, 27 ¶ 102, 30 ¶ 129).

On November 12, 2020 Wnorowski filed his amended class action complaint, claiming that UNH breached its contractual obligation to provide an in-person experience by transitioning to fully remote learning. Even though Wnorowski paid full tuition and certain fees thinking he would be learning in-person, UNH has not refunded any payments. In the alternative, he claims that UNH was unjustly enriched by retaining these tuition and fee payments while it delivered a remote learning experience. UNH responded by filing a motion to dismiss under Fed. R. Civ. P.

---

[2] The Court takes judicial notice of Governor Lamont's public health executive orders attached to Defendant's Motion to Dismiss because they are "matters of public record," of which Plaintiff has notice. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

[3] The Court considers UNH President Kaplan's emails to the University announcing the closure of the campus, which are attached to Defendant's Motion to Dismiss because Plaintiff relies upon and incorporates these documents in his complaint. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *see* ECF No. 9 at 6 ¶¶ 37-39.

3

12(b)(6). (ECF No. 18). Plaintiff filed a memorandum in opposition (ECF No. 22), and Defendants filed a reply. (ECF No. 23).

## II.   LEGAL STANDARD

In assessing a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While the Court must draw "all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Goel*, 820 F.3d at 559. In addition to the allegations of the complaint, this includes both documents expressly incorporated into the complaint and those on which the complaint relies heavily. The Court may also consider judicially noticeable documents, such as matters of public record including public health declarations and executive orders. *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 208 n.4 (D. Conn. 2020) (taking judicial notice of Connecticut Governor Lamont's COVID-19 Executive Orders).

## III.   DISCUSSION

4

UNH argues that the breach of contract and unjust enrichment claims fail either because they are foreclosed by a common law doctrine foreclosing judicial inquiry into allegations of "educational malpractice," *see Gupta v. New Britain Gen. Hosp.*, 687 A.2d 111 (Conn. 1996), or because its contract with students never included an enforceable promise to offer an in-person experience in Spring 2020. (ECF Nos. 18, 18-1 at 7-9). Plaintiff contends that his claim qualifies for an exception to the common law doctrine because UNH made a "specific promise" to provide an in-person program separate from its broader educational obligation. (ECF No. 22 at 18, 21). The parties further disagree whether Wnorowski can bring an unjust enrichment claim since they agree on the existence of the educational contract. The Court denies the motion to dismiss, finding that *Gupta* does not bar this suit, the contract is ambiguous about whether UNH specifically promised an in-person education, and plaintiff may pursue the unjust enrichment claim in the alternative.

### A. Educational Malpractice Bar

Connecticut common law does not recognize the tort of "educational malpractice," i.e., the claim that an academic institution did not "provide adequate educational services." *Gupta*, 687 A.2d at 119 n.15. "These claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached." *Id*. at 119. The project of "evaluat[ing] the course of instruction and … review[ing] the soundness of the method of teaching that has been adopted by [an] educational institution" is one that "the judiciary is ill equipped to undertake." *Id.* And along with many other states, Connecticut has extended this rule of judicial non-inquiry into the adequacy of an educational program to the law of contracts, refusing to allow breach of contract claims that require an adjudication of the school's educational decisions. *Id.* at 119-20.

5

There are, however, two exceptions to the educational malpractice bar: first, where the school "fail[s] in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field," *id.* at 120; and second, where "the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program." *Id.*; *CenCor, Inc. v. Tolamn*, 868 P.2d 396, 399-400 (Colo. 1994) (en banc) (allowing breach of contract claims for distinct promises to "provide [a student] with English language instruction" and to "permit students to repeat course work at no extra cost"). The first exception is not at issue in this case. (ECF No. 22 at 25; No. 23 at 7).

Wnorowski contends that his claim falls within the second exception, and I agree – at least at the pleadings stage.[4] As discussed below, the agreement between Wnorowski and UNH is ambiguous, and when reasonable inferences are drawn in his favor, Wnorowski advances a reasonable reading in which the school promised to provide an in-person experience when Wnorowski chose in-person classes and paid certain fees. Because the agreement is ambiguous, "the determination of the parties' intent is question of fact," *Cruz v. Visual Perceptions*, LLC, 311 Conn. 93, 101 (2014), one that cannot be resolved on a motion to dismiss.

A "specific contractual promise" as contemplated by *Gupta* is one the performance of which "is capable of objective assessment" and thus suitable to court adjudication, *Johnson v.*

---

[4] Plaintiff's memorandum cites two lines of cases denying motions to dismiss in similar Covid-19 closure suits. (ECF No. 22 at 15-21). He advances his theory mostly on cases that hold the educational malpractice doctrine is implicated but there is a specific provision that enables a breach of contract suit. *E.g., Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 415-16 (N.D.N.Y. 2020); *Hassan v. Fordham Univ.*, No. 20CV3265 (KMW), 2021 WL 293255 at *4-5 (S.D.N.Y. Jan. 28, 2021). This is distinct from the second line of cases, holding that the entire doctrine is inapplicable from the start because the theory of harm is distinct. These cases have found that the court will not have to adjudicate any matters of educational quality to determine whether the school breached a promise to provide in-person education, and so plaintiffs could continue under standard breach of contract theories. *E.g., Saroya v. Univ. of the Pacific*, No. 20CV3196 (EJD), 2020 WL 7013598 at *4-5 (N.D. Cal. Nov. 27, 2020); *Doe v. Emory Univ.*, No. 20CV2002 (TWT), 2021 WL 358391 at *4 (N.D. Ga. Jan. 22, 2021). Since Wnorowski does not advance this second theory clearly, and since the Court does not dismiss the claim under the "specific provision" theory, the Court does not decide whether Wnorowski's claim may fall entirely outside the educational malpractice bar at this point.

*Schmitz*, 119 F. Supp. 2d 90, 98 (D. Conn. 2000), as distinguished from contractual language involving the adequacy of an education in general. *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992) ("Ruling on [a specific contractual promise] would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise."). The exception applies when a plaintiff alleges that a school did not live up to a "distinct contractual promise independent of the defendant's obligation to offer a reasonable educational program." *Morris v. Yale Univ. Sch. of Med.*, No. 05CV848 (JBA), 2006 WL 908155 at *5 (D. Conn. Apr. 4, 2006) (finding that "the provision of the student handbook granting a student 3 opportunities to pass the examination before dismissal" was such a "distinct contractual promise"). *Osberg v. Yale Univ.*, No. CV085021879S (WH), 2009 WL 659072 at *3-4 (Conn. Super. Ct. Feb. 11, 2009) (recognizing breach of contract claim for alleged variance from procedures for dismissal due to inadequate academic work following the reasoning in *Johnson* and *Morris*). By contrast, when promises are vaguely worded or "aspirational," and adjudication could lead to judicial oversight of day-to-day school decisions, the educational malpractice bar forecloses the claim. *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 532 (D. Conn. 2020) (finding the school's stated mission to "eradicate sexual misconduct at the University" too vague and aspirational to be an enforceable "specific promise" under *Gupta*); *Faigel v. Fairfield Univ.*, 815 A.2d 140, 144 (Conn. App. Ct. 2003) (finding the oral promise to receive "many credits" for work done abroad too vague to qualify for the specific promise exception); *Bass v. Miss Porter's School*, 738 F. Supp. 2d 307, 323-24 (D. Conn. 2010) (finding a mandatory provision for school intervention surrounding "physical and emotional illness" too vague when it did not contain criteria by which the school would decide which illnesses warranted intervention); *Madej v. Yale Univ.*, No. 20CV133 (JCH), 2021 WL 148888 at

7

*9 (D. Conn. Jan. 15, 2021) (declining to find an implied withdrawal policy between a student and Yale when the student alleged no specific basis for such a contractual provision).

Wnorowski alleges that UNH made an express or implied promise to conduct in-person classes and to provide an on-campus experience during the Spring 2020 semester. As discussed below, the Court finds that Wnorowski has sufficiently pled that a reasonable person could interpret his contract with UNH to include a specific provision for an on-campus education. A promise to provide in-person classes or an on-campus experience would be "specific" under *Gupta* as it would avoid inquiry into broader educational choices or the overall adequacy of the plaintiff's education; the only question would be whether UNH provided an on-campus education. Such a singular promise would not require the Court to oversee broad educational policy choices.

UNH also argues that a determination of damages will necessarily involve the Court in an investigation of academic value of the sort barred by *Gupta*, in that the Court will have to decide the difference in value between an in-person education and an online education. Under Connecticut law, however, a court may award nominal damages for breach of contract even in the absence of a showing of harm. *See Lydall, Inc. v. Ruschmeyer*, 282 Conn. 209, 254 (2007) (awarding nominal damages for breach of contract). So difficulties in calculating damages are not a basis to grant a Rule 12(b)(6) motion to dismiss. And I agree with my colleague, Judge Dooley, that they also should not be a basis for applying the educational malpractice bar – at least at the motion to dismiss stage. *See Metzner v. Quinnipiac Univ.*, No. 3:20CV784 (KAD), 2021 WL 1146922 at *8 (D. Conn. Mar. 25, 2021)("[B]ecause the Plaintiffs' allegations concerning the lesser value of the online instruction that they received primarily would impact the damages element of Plaintiffs' contract claim, the Court is not persuaded that they form the

8

essence of the Complaint, such that Plaintiff's claims should be barred entirely at this stage"; finding it "instructive that the standard articulated by the Connecticut Supreme Court [in *Gupta*] does not focus on the nature of damages as the sine qua non to ascertaining whether a suit is fundamentally one of educational malpractice.") (internal alterations and quotation marks omitted). If Wnorowski's contract with UNH included a promise of in-person education, then, the educational malpractice bar would not be an obstacle to this lawsuit.

### B. Breach of Contract

Wnorowski alleges that his educational contract with UNH included a provision, either express or implied, that he would receive an in-person education and an on-campus experience. (ECF No. 22 at 21-30). Connecticut law recognizes a contractual relationship between a school and its students, *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 529 (D. Conn. 2020), a proposition neither party disputes. UNH argues that the contractual materials did not adequately specify Wnorowski's supposed entitlement to an in-person education, and so it was never obliged to provide one. (ECF No. 18-1 at 22-31). At this stage, the Court finds that the materials comprising the contract are ambiguous on this point, and Wnorowski has advanced a reasonable reading of the contract as promising in-person education.

To allege a breach of contract, Wnorowski must plead 1) formation of an agreement 2) performance by one party, 3) breach by the other party, and 4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540 (Conn. 2014). The contract consists of "documents, such as the catalogues [sic], bulletins, circulars, and regulations of an institution, as well as the oral and written expressions of the parties." *McNeil*, 436 F. Supp. 3d at 529. When there is definitive language, an issue of law is presented. *Id.*[5]

---

[5] The parties brief whether the contract included an express or implied provision for in-person learning separately. Connecticut law treats an implied contract the same as an express contract, except that the implied agreement and its

9

The parties agree that they formed a contract, (ECF No. 35 at 3-4), but disagree as to the content of the agreement.[6] Plaintiff argues that the parties had an agreement consisting of, inter alia, catalogs, bulletins, and other related school publications. (ECF No. 22 at 23-26). He alleges UNH uses its promotional materials, brochures, and website to attract students to apply to and matriculate in its on-campus program, and that registration and class materials referenced on-campus facilities. Consequently, he argues, the agreement included a promise of on campus instruction and extracurricular activities. (ECF No. 22 at 25-26; ECF No. 9 passim). Defendant contends that it never explicitly promised to provide only in-person education, and so there is no express provision to support Plaintiff's claim. (ECF No. 18-1 at 23-24). The Court finds that, when the facts are construed in his favor, Wnorowski advances a plausible reading of the contract. Since there are multiple reasonable readings, the contract is ambiguous as to whether there was a specific promise by UNH that students who paid tuition to take in-person classes and paid fees associated with campus resources would receive an on-campus education. Because the agreement is ambiguous, interpretation of the parties' intent is a question of fact, one not susceptible to resolution on a motion to dismiss.

Wnorowski alleges that when he chose his classes the registration page indicated the physical classroom location where those classes would be held. (ECF No. 9 at 25 ¶¶ 82, 86). Further, UNH's promotional materials about campus, delivered between its offer of admission

---

contents are proven through facts about the surrounding circumstances, as opposed to only through discrete documents. *Boland v. Catalano*, 521 A.2d 142, 144 (Conn. 1987). The Court will not separate the two theories for purposes of this ruling. *Metzner*, 2021 WL 1146922 at *9.

[6] At least for purposes of UNH's motion to dismiss, the parties do not diverge on the remaining elements of breach of contract. They agree that Wnorowski performed his half of the bargain by paying tuition and fees. (ECF No. 9 at 26 ¶ 96, 30 ¶ 127). Next, UNH retained the entire tuition and fees without providing a complete in-person semester, constituting material breach if in fact the agreement specifically provided for an in-person program. (*Id.* at 28 ¶ 111, 30 ¶ 128). Finally, Plaintiffs have alleged that UNH's detention of these monies constituted a harm. (*Id.* at 28 ¶ 103, 30 ¶ 130).

10

and Wnorowski's acceptance (*id.* at 23 ¶¶ 75-76), tout the benefits of being on campus, implying that matriculants can enjoy those benefits. (*Id*. at 4 ¶ 24, 11-25 ¶¶ 59-88). For example, the materials promote students' access to "the Peterson Library and the Beckerman Recreation Center, which is open nearly 18 hours a day." (*Id*. at 19). (If the Recreation Center were available online only, it would presumably be "open" 24 hours a day.) The Library and the Recreation Center are listed as resources easily accessible from the residence halls along with "classes" and "campus activities." (*Id*. at 18). These materials suggest that other documents referencing specific on-campus locations for classes were designed to convey where those classes would actually occur. The offer letter itself invites students to "visit our campus," and the school's materials encourage students to attend "Charger Day," during which they tour the campus, sit in on a class, and hear from faculty and students "about all the benefits [UNH's] location has to offer." (Id. at 24 ¶ 79.) When read together, these materials can reasonably be read to imply a promise that UNH will provide an in-person education.

UNH disputes Wnorowski's reliance on the website and other publications outside the official course catalog and handbook, contending that they are advertisements and, thus, mere invitations to bargain, rather than part of the bargain itself. (ECF No. 18-1 at 28-29). But the allegations suggest that they are more than that. Wnorowski alleges that he received at least some of them with his offer letter or accessed the websites between UNH's offer and his acceptance. (ECF No. 9 at 23 ¶¶ 74-76). The Court may consider them as part of the contract – or at least as evidence illuminating an ambiguity in the contract concerning whether full tuition- and fee-paying students would receive an in-person education --, because the allegations suggest that they informed Wnorowski's decision whether to accept UNH's offer and that UNH published them in part to encourage accepted students to matriculate. Wnorowski may have

11

reasonably understood that the website and materials the offer letter invited him to consider when accepting admission were incorporated into the educational contract. *See Walker v. People's United Bank*, 305 F. Supp. 3d 365, 375 (D. Conn. 2018) ("When there are multiple writings regarding the same transaction, the writings should be considered together to determine the intent of the parties.") (internal quotations omitted).

UNH disputes the plausibility of Wnorowski's reading. First, it argues that it never expressly promised to provide *only* in-person instruction or to refrain from altering the mode of instruction, and so there was never a specific promise for in-person instruction. (ECF No. 18-1 at 23-26). These circumstances, however, do not make it unreasonable to interpret UNH's materials, including statements that particular classes would be held in particular on-campus rooms, as a promise that classes generally would be held on campus.[7]

The parties' course of conduct – UNH's offering courses in-person for the first half of the semester and all previous semesters – likewise makes it reasonable to construe the parties' agreement as containing an in-person component. UNH resists this notion, arguing that if the Court were to find an implied contract, even in part, from a "prior course of conduct," this would allow students "to hold UNH liable for changing class locations or having substitute instructors, an outcome that would clearly run afoul of the discretion afforded to educational institutions." (*Id.* at 30-31). This argument has several flaws: 1) many of these situations will not inflict a cognizable injury under contract, *Paynter v. New York Univ.*, 319 N.Y.S.2d 893, 894 (N.Y. App. Div. 1971) ("circumstances of the relationship permit the implication that the professor or the

---

[7] UNH argues that differences in tuition or in program modality are not strong enough evidence to support an implied contract for only in-person education. (ECF No. 18-1 at 29-30). I agree with Judge Dooley, however, that, at least for pleading purposes, a difference in tuition combined with other written distinctions between an online and non-online program is adequate to allege an implied contract for in-person classes. *Metzner*, 2021 WL 1146922 at *10.

12

college may make minor changes in this regard. The insubstantial change made in the schedule of classes does not permit a recovery of tuition."); 2) a student may have reasonable expectations of a minor difference in scheduling but not a major difference, *Metzner*, 2021 WL 1146922 at *6; and 3) there may be situations where students would have a cognizable claim for larger shifts. *Ford*, 507 F. Supp. 3d at 415 ("there is a world of difference between canceling some classes—in the absence of any affirmative guarantee on the number of classes to be held—and not affording students services and benefits for an extended period of time despite such a promise").

The interpretations of and arguments around the fee agreements are largely similar to those related to the tuition agreements. Wnorowski advances a reasonable interpretation that the General Student Fee, referencing "facilities," the Lab Fee covering "specialized materials and/or a specialized environment," and the Parking Fee would include access to those related facilities, environments, and parking spaces. (ECF No. 9 at 5 ¶ 30). Wnorowski alleges, for example, that the General Student fee was provided "in exchange for access to health and counseling services, together with the Beckerman Recreation Center," (ECF No. 9 at 5 ¶ 30), and that the Lab Fee was designed to support "courses requiring specialized materials and/or a specialized learning environment." (*Id*. at 5 ¶ 29). Indeed, the labels attached to the "Lab Fee" and the "Parking Fee" alone suggest that they reflect the price of admission to specific campus facilities. The interpretation that these fees were charged in return for access to the physical facilities they referenced is at least reasonable.

UNH argues that even if there was a promise to provide an in-person experience, another provision in the Course Catalog allowed it unilaterally to modify its academic programs. (ECF No. 18-1 at 31-33). The Course Catalog states on the first page: "The University further

13

reserves the right to make changes at its own discretion in admission requirements, tuition and fees, staffing, course offerings, schedules, and regulations." (*Id*.). UNH argues that "under Connecticut law, a reservation of rights provision in an educational services contract is enforceable" and allows the institution to make changes to its program at its discretion. (ECF No. 23 at 13). That may be so, but the above-quoted provision, too, is ambiguous. Does the language permitting changes to "course offerings" really contemplate a wholesale shift in the entire learning experience to online classes for students who paid tuition and fees with the reasonable expectation that they would learn on campus, or is it just intended to afford UNH leeway for adjustments to the overall mix of offerings, such as last-minute class cancellations or additions? The language is too ambiguous to answer that question on its own, and so the question becomes a factual one. The other terms used in the "changes" sentence on which UNH relies are even less suggestive of a shift to online learning: such a change does not involve "admission requirements," "tuition and fees," or "staffing" at all; "schedules" is more naturally read to refer to course times than to locations; and "regulations" is too encompassing a term to communicate definitively that UNH was reserving the right to move all learning to an online forum. In short, UNH hangs its hat on a general disclaimer that does not clearly cover the specific – and dramatic – change UNH made to students' learning experience. A reasonable party could have interpreted the disclaimer as not contemplating such a major shift. (ECF No. 22 at 32).

### C. Unjust Enrichment

In the alternative Wnorowski seeks to recover pro-rated tuition and fee payments "to the extent it is determined a contract does not exist or otherwise apply" on an unjust enrichment theory. (*Id*. at 28-29 ¶¶ 105-19, 31-32 ¶¶ 132-45). "Plaintiffs seeking recovery for unjust

14

enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Town of New Hartford v. Conn. Resources Recovery Auth.*, 970 A.2d 592, 609 (Conn. 2009) (quotations omitted).

Wnorowski has adequately alleged all three elements. First, he asserts that he paid UNH the entire tuition and fees while not receiving the entire benefit, use of campus faculties. (ECF No. 9 at 28 ¶¶ 108-10 and 31 ¶¶ 135-38). He alleges UNH was able to run its programs more cheaply and thus profited from retaining his full payment of tuition and fees. (*Id*. at 29 ¶¶ 114-16 and 31-32 ¶¶ 140-41). He asserts UNH wrongfully retained the entirety of these payments even though it did not provide the entire service these fees were to fund. (*Id*. at 28 ¶ 113 and 31 ¶ 139). Finally, this retention of funds is to the detriment of tuition-paying and fee-paying students.

UNH argues that its retention of the entire tuition was not unjust because it provided education and academic credits, a basis on which several other district courts have dismissed unjust enrichment claims against universities. (ECF No. 18-1 at 34-35). Those cases are distinguishable as the schools there all provided on-campus education for the entire semester at issue. *Krebs v. Charlotte Sch. of Law, LLC*, No. 17CV190 (GCM), 2017 WL 3380667 at *6 (W.D.N.C. Sept. 5, 2017) (dismissing unjust enrichment claim arising from a law school's loss of ABA accreditation); *Bleiler v. Coll. of Holy Cross*, No. 11CV11541 (DJC), 2013 WL 4714340 at *2, 18 (D. Mass. Aug. 26, 2013) (dismissing an unjust enrichment claim arising from a student's expulsion at the end of May of his senior year because he had received four years of education and services); *Roe v. Loyola Univ. New Orleans*, No. 07CV1828 (GTP), 2007 WL 4219174 at *2 (E.D. La. Nov. 26, 2007) (at summary judgment, finding that the University was

15

allowed to charge tuition and provide legal education at a different law school pursuant to an explicit visiting status regulation).

Finally, UNH contends that since the parties agree there was a contract, unjust enrichment is not cognizable. *United Coastal Indus., Inc. v. Clearheart Const. Co.*, 802 A.2d 901, 905-06 (Conn. App. Ct. 2002). But claims for unjust enrichment may be pled in the alternative to a breach of contract claim, *Stanley Works Israel Ltd. V. 500 Group, Inc.*, 332 F. Supp.3d 488, 509-10 (D. Conn. 2018)(citing cases), and the Court sees no reason not to allow Wnorowski to do so here.

## IV. CONCLUSION

For the reasons above, UNH's motion to dismiss (ECF No. 18) is DENIED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
August 3, 2021