UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                               :

ANTOINETTE MOORE, JAMES          :
HOFMANN and COSMO PFEIL, each        **MEMORANDUM DECISION**
individually and on behalf of others similarly  :  **AND ORDER**
situated,                                                   :
                                                               :  20-cv-3843 (BMC)
                               Plaintiffs,        :

                  - against -                      :

LONG ISLAND UNIVERSITY,               :

                             Defendant.      :
----------------------------------------------------------- X

**COGAN**, District Judge.

    Plaintiffs Antoinette Moore, James Hofmann, and Cosmo Pfeil, undergraduate students at Long Island University ("LIU") during the Spring 2020 semester, bring this putative class action against LIU. Due to the COVID-19 pandemic, LIU suspended in-person instruction and related services midway through the semester. Plaintiffs assert that these changes deprived them and other LIU students of the educational experiences for which they had bargained and paid through their tuition and certain fees. They assert claims for (i) breach of contract, (ii) unjust enrichment, (iii) conversion, and (iv) deceptive business practices in violation of Sections 349 and 350 of the New York General Business Law.

    Currently before the Court is LIU's motion for judgment on the pleadings. For the reasons set forth below, LIU's motion is GRANTED.

## BACKGROUND

    LIU is a private university with campuses in both Brooklyn and Bronxville, New York. During the Spring 2020 semester, plaintiffs were each enrolled at LIU as full-time undergraduate

students.  Each paid tuition as well as the mandatory University Fee for the semester.  Hoffman also paid an additional Music Course Fee for individual in-person piano and drum lessons.

For approximately the first eight weeks of the Spring 2020 semester, it was business as usual; plaintiffs' classes proceeded in-person and on-campus services and facilities operated according to plan.  Then the pandemic arrived.  On March 18, 2020, New York Governor Andrew M. Cuomo issued Executive Order 202.6, mandating a statewide shutdown of non-essential businesses beginning on March 22, 2020.  See N.Y. Exec. Order No. 202.6 (Mar. 18, 2020).  Pursuant to this Order, schools were forbidden from holding "in-person congregate classes," but were explicitly allowed to continue "remote instruction or streaming of classes."  With explicit governmental restrictions on in-person instruction, not to mention the imminent public health concerns, universities in New York, rather than break the law or cease providing any instruction to students, were forced to move online.

LIU was one such school.  Seeing the writing on the wall, LIU announced on March 11, 2020 that it would begin delivering classes via electronic channels on March 16, 2020, extending this change through the end of the semester the following day.  And on March 13, 2020, LIU closed certain campus facilities and required all students who lived on campus to vacate their dormitory rooms if they were able to do so.

Plaintiffs do not question the wisdom or necessity of LIU's actions.  Nevertheless, they allege that LIU breached its contractual obligations to provide certain services, including in-person instruction and access to campus facilities and activities, when it moved to a virtual instruction model and curtailed its activities in response to the COVID-19 pandemic. Plaintiffs allege that their payment of tuition was in exchange "for an on-campus, in-person educational experience, with all the appurtenant benefits offered by a first-rate university."  By

2

moving instruction online and failing to provide certain on-campus services, they contend that LIU breached this contract by "provid[ing] a materially deficient and insufficient alternative."

Plaintiffs do not identify any specific contractual provision that guarantees in-person instruction or the provision of on-campus services. Instead, they invoke various representations made in both LIU's marketing and academic materials. Plaintiffs point to various marketing materials in which LIU advertised itself consistently with the expectation that it would offer primarily in-person instruction. In those materials, LIU extolled the benefits of its "vibrant campus life" where "learning and development is not limited to the classroom," promising to offer "many student programs and opportunities to enrich your academic experience." LIU also heavily promoted its Brooklyn location. In a list LIU created of the top five reasons to transfer to LIU Brooklyn, two reasons related to its location. LIU noted that "all the hip restaurants, activities and entertainment you could ever want for" are nearby and the opportunity Downtown Brooklyn presented made it "No. 1 for job growth" in the New York metropolitan area.

Plaintiffs also indicate that LIU's course materials similarly reflect the expectation of on-campus instruction. LIU's online Course Catalog provided information about the mode of instruction for each course and, for those that were to be taught in-person, the location of the course on-campus. Further, course-specific syllabi and LIU academic policies echo the expectation that most classes would be in-person.

Additionally, plaintiffs seek a refund of certain mandatory and optional fees. One such fee is the mandatory University Fee. Plaintiffs allege this fee was "designed to cover the cost of in-person experiences, such as to fund student organizations and other on-campus activities." Plaintiffs claim that they were "deprived of all such experiences." Other fees include "program or course specific fees", such as the Music Course Fee that Hoffman paid for in-person, one-on-

one piano and drum lessons. Plaintiffs contend that LIU improperly retained these fees despite not providing the requisite services. In fact, it is unclear whether Hoffman continued his lessons post-March 2020.

LIU has moved for judgment on the pleadings, arguing, among other things, that the educational malpractice doctrine bars plaintiffs' claims; that plaintiff fails to allege a specific promise for in-person instruction; and that plaintiffs fail to properly plead their unjust enrichment, conversion, and New York statutory claims.

## DISCUSSION

### I.   Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) and a motion to dismiss under Rule 12(b)(6) are subject to the same legal standards. See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

In deciding a motion under either Rule, the Court must "constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)). To survive a motion for judgment on the pleadings, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Determining

4

whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

"On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011). Additionally, the court may consider "materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Id. (citations and quotations omitted).

## II.     Educational Malpractice

As a threshold matter, the Court must determine whether it should dismiss plaintiffs' breach of contract claims due to New York's bar on educational malpractice claims. See Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 93 (2d Cir. 2011) ("New York law does not recognize a claim for educational malpractice, and a student may not seek to avoid this rule by couching such a claim as a breach of contract claim.") (internal quotations and citations omitted); Amable v. New School, No. 20-cv-3811, 2021 WL 3173739, at *3 (S.D.N.Y. July 27, 2021) ("Educational malpractice claims, which ask the Court to involve itself in the subjective professional judgments of trained educators, are not cognizable under New York law.").

. This policy stems from the principle that courts should not substitute their own judgment for that of academic officials who are "uniquely capable of deciding what is appropriate and necessary for educational institutions to function." Id. "Accordingly, when the essence of the complaint is that the school breached its agreement to provide an effective education, or the plaintiffs ask a court to evaluate the course of instruction or review the

5

soundness of the method of teaching that has been adopted by an educational institution, a court must dismiss the complaint." Id. (internal quotations and citations omitted).

Notably, the "educational malpractice doctrine does not foreclose all lawsuits by students." Zagoria v. New York Univ., No. 20-cv-3610, 2021 WL 1026511, at *3 (S.D.N.Y. Mar. 17, 2021). "When the essence of the complaint moves beyond the effectiveness of education and into more specific promises for specified services, a student may be able to sue for breach of contract." Id.

Some of plaintiffs' allegations resemble educational malpractice claims, particularly those that explicitly compare the alleged sufficiency and value of online courses to in-person instruction.

For example, plaintiffs allege that they "have paid tuition for an on-campus, in-person educational experience, with all the appurtenant benefits offered by a first-rate university, and were provided a materially deficient and insufficient alternative." They also contend that "they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services." Plaintiffs, recognizing the resemblance of their claims to educational malpractice claims, plead in their complaint that "[t]his cause of action does not allege 'educational malpractice.'"

Although plaintiffs' own assessment of their claims is obviously not controlling, I agree with their evaluation here. Plaintiffs' breach of contract claims do not run afoul of New York courts' steadfast refusal to recognize claims such claims. Rather, their claim is that LIU breached its contractual obligations as set forth in course catalogs, course bulletins, and class schedule searches where it purported to offer "a specific and identifiable product, that being live, in-person, on-campus education, with its featured ancillary and related services." These

6

allegations go to "specific promises for specified services" rather than the "effectiveness of the education." Zagoria, 2021 WL 1026511, at *3. Other courts considering nearly identical allegations have nearly universally refused to dismiss similar complaints as prohibited educational malpractice claims. See, e.g., id.; see also Fedele v. Marist Coll., No. 20-cv-3559, 2021 WL 3540432, at *4 (S.D.N.Y. Aug. 10, 2021). Plaintiffs' claims are not barred by the educational malpractice doctrine.

### III. Breach of Contract

To survive a motion for judgment on the pleadings, "a breach of contract claim need only allege: (1) the existence of an agreement; (2) adequate performance of that agreement by the plaintiff; (3) breach of the agreement by the defendant; and (4) resulting damages." Ford v. Rensselaer Polytechnic Inst., 507 F. Supp. 3d 406, 413 (N.D.N.Y. 2020) (citing Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). In the absence of a formal written agreement, "[i]n New York, the law recognizes the existence of an implied contract between universities and their students." Hassan v. Fordham Univ., 515 F. Supp. 3d 77, 86 (S.D.N.Y.), opinion amended and superseded in part, 533 F. Supp. 3d 164 (S.D.N.Y. 2021) (citations omitted). "The rights and obligations of the parties as contained in the university's bulletins, circulars and regulations made available to the student[ ] become a part of this contract." Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654, 511 N.Y.S.2d 880, 881 (2d Dep't 1987).

Importantly, "to state a valid claim for a breach of contract" against a university, a student "must state when and how the defendant breached the specific contractual promise." Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ., No. 04-cv-704, 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005). Accordingly, courts in the Second Circuit applying New York law uphold contract claims based on specifically enumerated unfulfilled promises. See, e.g.,

Ansari v. N.Y. Univ., No. 96-cv-5280, 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997) (upholding claims where NYU failed to fulfill specific promises, including providing "state-of-the-art facilities, faculty tutor-advisors, appropriate recognition upon completion of the program, overviews of the latest techniques, program activities from 9:00 A.M. to 4:00 P.M. every day, and membership in the [American Association of Orthodontics]"). By contrast, courts have rejected claims based on more general promises. See Doe v. Syracuse Univ., 440 F. Supp. 3d 158, 175 (N.D.N.Y. 2020) (finding that "[g]eneral policy statements and broad and unspecified procedures and guidelines will not suffice.").

Plaintiffs assert two separate breach of contract claims, one concerning tuition, and one concerning the various fees.

### A. Tuition

Plaintiffs' claim that LIU breached a contractually enforceable promise that instruction would be on-campus and in-person fails. Critically, plaintiffs do not identify any statements made by LIU that contain or constitute specific promises to provide *only* in-person, on-campus education. Compare In re Columbia, 523 F. Supp. at 424 (finding that the plaintiff's breach of contract claim against "Pace survives because she alleges that the course registration portal on Pace's website stated that '[o]n-campus' courses would be 'taught with only traditional in-person, on-campus class meetings.'"). Plaintiffs rely on a variety statements LIU set forth in or implied by its website, academic catalogs, student handbooks, correspondence, marketing materials, Course Catalog, and other circulars, bulletins, and publications. However, every statement on which plaintiffs rely, although admittedly presupposing that instruction would likely be in-person, do not contain or constitute a specific promise to that effect.

Plaintiffs note that LIU's online Course Catalogue identified specific locations for each class offered and allowed students to search for classes by mode of instruction. However, as other courts in this Circuit have found, references in the Course Catalog to specific locations and modes of instruction do "not imply a contractual entitlement to continued instruction in the same location and manner." See, e.g., Morales v. New York University, No. 20-cv-4418, 2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021). Plaintiffs have also not identified any "express statements promising that these aspects of a course were not subject to change" or suggesting that LIU "relinquished its authority to alter the modality of its course instruction." Shak v. Adelphi Univ., No. 20-cv-1951, 2021 WL 3030069, at *3 (E.D.N.Y. July 15, 2021) (internal quotations and citations omitted). In fact, LIU's Undergraduate Bulletin actually contains a disclaimer stating that it "reserved[ed] the right to effect changes in the curriculum, administration, tuition and fees, academic schedule, program offerings and other phases of school activity, at any time, without prior notice" and that it "assumes no liability for interruption of classes or other instructional activities due to fire, flood, strike, war or other force majeure."[1]

Other courts in this Circuit have found that disclaimers in course catalogs with a similarly "broad scope" mean that "plaintiffs cannot plausibly allege that [the defendant] breached its contract in violation of the catalog's statement that certain classes would be held in person."

---

[1] Plaintiffs did not attach the bulletin to the complaint. However, the Court may properly rely on it as "[a] complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." L-7 Designs, Inc., 647 F.3d at 422 (citations and quotations omitted). "A document is integral to the complaint for purposes of a [Rule 12(c)] motion if the plaintiff had actual notice of the document or its contents . . . and relied upon that document in framing his complaint." Khurana v. Wahed Invest, LLC, No. 18-cv-233, 2019 WL 1430433, at *6 (S.D.N.Y. Feb. 26, 2019) (citations and quotations omitted). As plaintiffs explicitly reference the bulletin in their complaint, they both had notice and rely on it.

The same is not true of the Financial Responsibility Agreement. LIU maintains that plaintiffs' breach of contract claim fails because the contract between LIU and each individual student on campus is governed by the FRA. Although plaintiffs had notice of this document, they do not appear to have relied on it in their complaint. Even if the Court could properly consider the FRA, it too is not dispositive of the issue. Upon construing the facts in the light most favorable to plaintiffs, it remains unclear if FRA exclusively governs the subject of this dispute.

Hewitt v. Pratt Inst., No. 20-cv-2007, 2021 WL 2779286, at *3 (E.D.N.Y. July 2, 2021) (a disclaimer in Pratt's catalog reserved "the right to periodically update and otherwise change any material, including faculty listings, course offerings, policies, and procedures"); see also Romankow v. New York Univ., No. 20-cv-4616, 2021 WL 1565616, at *4 (S.D.N.Y. Apr. 21, 2021) ("[g]iven the broad scope of this disclaimer it is clear that NYU expressly reserved the right to change, relocate, and/or modify its course offerings.").

Other references in "syllabi, departmental policies and handbooks, and course registration portal" also do not imply a contract. Rather, "[t]hey merely memorialize the pre-pandemic practice; they offered no guarantee that it would continue indefinitely." In re Columbia, 523 F. Supp. 3d at 423.

References in LIU's marketing materials to the Brooklyn campus and New York City are also not sufficient to support a claim. None of these statements make specific promises. The "Visit Campus" page states that "[o]ur beautifully landscaped, self-contained 11-acre campus offers easy access to the resources, professional opportunities, entertainment and historic attractions of the world's greatest city." LIU also promotes that "[t]he city's hippest neighborhoods – Fort Greene, Williamsburg, Boerum Hill, Brooklyn Heights and Clinton Hill – are right in our backyard." These are merely statements of fact or opinion about the campus and its location, not enforceable contractual promises. Although after enrolling as students at LIU, students may come to disagree that Clinton Hill is among the "hippest" neighborhoods in the city or that they have "easy access" to what is purportedly "the world's greatest city", they could not bring a breach of contract claim based on these "promises." The same is true of the other statements on which plaintiffs rely.

Plaintiffs also seem to argue that these promises regarding instruction were implied by either custom or course of dealing. This argument fails because a university's academic and administrative prerogatives may not "be impliedly limited by custom." Gertler v. Goodgold, 107 A.D.2d 481, 485, 487 N.Y.S.2d 565, 568 (1st Dep't 1985); see also Hassan, 515 F. Supp. 3d at 89-90 (noting that "[p]rior conduct in the educational setting does not transform over time into contractual entitlement."). "[T]he fact that [LIU] provided in-person instruction in [plaintiffs'] courses before March 2020 does not imply a contractual entitlement to continued instruction in the same location and manner." In re Columbia, 523 F. Supp. 3d at 423; see also Ford, 507 F. Supp. 3d at 414 ("[A]n implied promise for on-campus education based on the nature of defendant's [sic] dealings with the school ... does not withstand scrutiny."). Further, that LIU offered some classes remotely prior to the pandemic does not imply that students taking in-person programs were promised exclusively in-person instruction. See In re Columbia, 523 F.Supp.3d at 423, (that Columbia offers "fully online" programs does not imply that students in "other programs, such as Plaintiffs, were contractually entitled to exclusively in-person instruction").

Finally, to the extent plaintiff alleges that LIU promised to provide any in-person "related services," plaintiffs' claims also fail. Plaintiffs either do not identify specific promises or, if they do, they do not plead breach. For example, to the extent LIU promised to provide networking opportunities, student organizations, office hours, or access to performances, LIU could also fulfill its promise by providing these experiences virtually.

### B. Fees

Plaintiffs also claim that LIU breached its contractual obligations to provide access to certain campus facilities and activities in exchange for mandatory or optional fees.

11

Plaintiffs allege that they paid a mandatory University Fee in exchange for certain non-academic services. Despite paying this fee in full, after access to campus became restricted, they no longer had practical access during the 2020 spring term to the corresponding services. Plaintiffs also assert that students paid other "optional fees that include, but are not limited to, individual class fees, such as the Music Course Fee paid by plaintiff Hoffman for one-on-one in-person drum lessons."

Plaintiffs again have failed to plead a claim as they have not "plausibly alleged that they paid fees in spring 2020 for services that could only be provided in person." Hewitt, 2021 WL 2779286, at *4. Their allegations are unavailing due to their conclusory nature. As to the University Fee, plaintiffs allege "[u]pon information and belief" that the University Fee is "designed to: cover the cost of in-person experiences, such as to fund student organizations and other on-campus activities." They state that "[i]n its publications and particularly on its website, Defendant specifically describes the nature and purpose of each fee." However, they never fully define what this fee was to be used for and what was actually provided. Without clarity on both of these points, it is impossible to determine whether LIU fulfilled its obligations.

The same is true for these other "optional fees." Other than the Music Course Fee, plaintiffs do not specify what these fees are or that they paid them. A specific contractual promise cannot be identified without a description. Regarding the Music Course Fee, for example, plaintiffs do not specify what exactly this fee was for or whether instruction continued virtually. These allegations do not state a claim.

## IV. Unjust Enrichment

As an alternative to their breach of contract claims, plaintiffs bring claims for unjust enrichment. Specifically, they allege that LIU impermissibly enriched itself by retaining tuition and fees despite the operational changes necessitated by the pandemic.

Under New York law, to state a claim for unjust enrichment, a plaintiff must allege "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted). Unjust enrichment claims are available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," such as when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 740 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract . . . claim.").

Plaintiffs correctly assert that they may plead unjust enrichment in the alternative at this stage of litigation. See Downey v. Adloox Inc., 238 F. Supp. 3d 514, 526 (S.D.N.Y. 2017). However, the New York Court of Appeals has made clear that "unjust enrichment is not a catchall cause of action to be used when others fail." Corsello, 18 N.Y.3d at 790, 944 N.Y.S.2d at 791. "[C]ourts in this District have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship." In re Columbia, 523 F. Supp. 3d at 430. Here, it is undisputed that the parties share a contractual relationship –

the issue is the terms of the contract. Consistent with the decisions from other courts, plaintiffs' unjust enrichment claim is dismissed.

## V. Conversion

Next, plaintiffs allege that LIU has retained and continues to possess the tuition and fees paid by plaintiffs despite its failure to provide the services promised, thus converting their monies.

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006), certified question answered, 8 N.Y.3d 283, 832 N.Y.S.2d 873 (2007) (quotations omitted). This includes a "denial or violation of the plaintiff's dominion, rights, or possession" over her property. Id. (quoting Sporn v. MCA Records, Inc., 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 416 (1983)). Defendant must also exclude the owner from exercising her rights over the goods. Id. (citing New York v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 259, 146 N.Y.S.2d 637, 645 (2002)).

However, "[a]n action for conversion of money is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession." Ehrlich v. Howe, 848 F. Supp. 482, 492 (S.D.N.Y. 1994). If the allegedly converted money is "incapable of being described or identified in the same manner as a specific chattel," such as when a customer of a bank deposits funds into an account at the bank, it is "not the proper subject of a conversion action." High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998).

Plaintiffs' allegations in these cases do not support claims for conversion. Their claims do not involve identifiable and segregated property that defendants were required to return. "The

14

funds are not identifiable because it is 'impossible to distinguish between tuition funds that covered in-person instruction during the first part of the Spring 2020 semester and those that covered the remote instruction after the onset of the pandemic.'" Fedele, 2021 WL 3540432, at *8 (quoting Hassan, 2021 WL 293255, at *11).

Moreover, like an unjust enrichment claim, a claim for conversion does not arise from a failed breach of contract claim. See, e.g., Osagiede v. Carlo Shipping Int'l, No.    , 2022 WL 43750, at *5 (E.D.N.Y. Jan. 5, 2022) ("Plaintiff's failure to allege an unlawful or wrongful act independent of her failed breach of contract claim is fatal to her conversion claim"); Flatscher v. The Manhattan School of Music, No. 20-cv-4496, 2021 WL 3077500, at *10 (S.D.N.Y. July 7, 2021) ("a conversion claim may only succeed if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract."). Plaintiffs' conversion claims are dismissed.

## VI. New York General Business Law

Finally, plaintiffs allege violations of New York's General Business Law §§ 349 and 350 prohibiting deceptive business practices and false advertising. Plaintiffs allege that LIU's marketing materials created the reasonable expectations of enrolled students that they would receive live, in-person, on-campus education for the entire Spring 2020 term. Thus, LIU's deprivation of such instruction and access for the second half of the spring semester "constitute unfair business practices since the actions were deceptive and injurious to Plaintiffs" and other members of the putative classes. This argument also fails.

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 similarly prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Id. § 350. To state a claim under

either section, a plaintiff must allege facts showing that a plausible inference can be drawn of "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452 (2012).

"Deceptive acts are defined objectively, as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." Boule v. Hutton, 328 F.3d 84, 94 (2d Cir. 2003) (citing Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)). Determining whether a practice is deceptive or materially misleading is an objective exercise and requires a showing that the "reasonable consumer would have been misled by the defendant's conduct." M & T Mortg. Corp. v. White, 736 F. Supp. 2d 538, 570 (E.D.N.Y. 2010).

No reasonable prospective student could consider himself either "deceived" or "misled" where LIU's normal course of on-campus instruction was altered mid-semester by an unforeseen global pandemic that prompted a state-wide prohibition of on-campus, in-person instruction. See Ford, 507 F. Supp. 3d at 421 ("No reasonable consumer would expect a university to remain open for in-class instruction in the face of a pandemic and a state-mandated shutdown, regardless of whether the school advertised on-campus learning as a strength."). And plaintiffs obviously do not suggest that LIU knew in advance that a pandemic would necessitate these changes to its services and operations beginning in mid-March 2020 but failed to disclose this information to students.

## CONCLUSION

LIU's motion for judgment on the pleadings is GRANTED.

**SO ORDERED.**

Digitally signed by
Brian M. Cogan
_____
U.S.D.J.

Dated:  Brooklyn, New York
        January 24, 2022

17